PEOPLE v KELLY

Docket No. 71704. Argued April 2, 1985 (Calendar No. 5).—Decided
November 13, 1985.

Jerome Kelly was convicted by a jury in the Detroit Recorder's
Court, Vera Massey Jones, J., of first-degree felony murder. The
Court of Appeals, N. J. KAUFMAN, P.J., and WAHLS and CLEM-
ENTS, JJ., affirmed in an unpublished opinion per curiam
(Docket No. 57526). The defendant appeals, asserting that
instruction of the jury on the issues of intent required for
conviction of felony murder and aiding and abetting the mur-
der was error.

In an opinion by Chief Justice WILLIAMS, joined by Justices
RYAN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, the Supreme
Court *held:*

The felony-murder instructions, when read in their entirety,
accurately stated the law with respect to malice. Any imperfec-
tion in the instructions with respect to the intent necessary to
support the conviction of aiding and abetting felony murder did
not result in manifest injustice.

1. Malice necessary to support a conviction of first-degree
felony murder may not be inferred merely from an intent to
commit the underlying felony. The intent is a factor, however,
which may be used in determining the existence of malice. In
this case, the jury instructions on felony murder, when read in
their entirety, accurately stated the law with respect to malice.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] Am Jur 2d, Homicide §§ 45 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Felony
    Murder Doctrine; Homicide.
[2, 3] Am Jur 2d, Criminal Law §§ 168-174.
    See the annotations in the ALR3d/4th Quick Index under Accom-
    plice.
[4] Am Jur 2d, Homicide §§ 482 *et seq.*
    What felonies are inherently or foreseeably dangerous to human
    life for purposes of felony-murder doctrine. 50 ALR3d 397.
[5] Am Jur 2d, Homicide §§ 482 *et seq.*
    Am Jur 2d, Robbery §§ 71-76.
    See the annotations in the ALR3d/4th Quick Index under Instruc-
    tions to Jury; Robbery.

The jury was not required to determine the existence of the requisite malice only on the basis of the defendant's intent to commit the underlying felony.

2. The requisite intent required to support a conviction of aiding and abetting is either the intent required to support a conviction as a principal or participation in the crime with knowledge of the principal's intent. Where an aider and abettor, such as the defendant in this case, knows that a principal intends to kill the victim of the underlying felony or to act in a manner which is likely to cause the death of or great bodily harm to the victim, he is acting with a wanton and wilful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm. Thus, if the victim is killed during the commission of the underlying felony, the aider and abettor has the malice necessary to support a conviction of first-degree felony murder. In this case, the defendant raised no objection in the trial court to the instructions challenged on appeal, and the appropriate standard of review is whether manifest injustice occurred. The evidence offered to support the defendant's conviction of aiding and abetting felony murder was overwhelming. Any imperfection in the instructions with respect to the requisite intent did not result in manifest injustice.

3. The defendant's assertion that the trial court exceeded its discretion in admitting rebuttal evidence is without merit. No objection was raised at trial, no manifest injustice occurred as a result, and the evidence was properly admitted.

4. The defendant's contention that the trial court abused its discretion in admitting evidence of his prior convictions is also without merit. Evidence of prior convictions is admissible where, as in this case, the court determines that the probative value of admitting the evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination. The trial court properly exercised its discretion in admitting the evidence of the defendant's prior convictions for the purpose of impeachment.

Affirmed.

Justice LEVIN concurred with the result reached on the aiding and abetting issue because no objection to the instruction of the trial court was raised. With respect to the felony-murder issue, however, he stated that the trial court incorrectly instructed the jury, over objection by the defense, that it might infer from the defendant's participation in the robbery that he had the requisite intent to support a conviction of

murder and that instruction was not remedied by the general instructions on the law of homicide. The inaccurate instruction conflicted with the general instructions. The jury was left to surmise whether the general instructions on the law of homicide or the incorrect instruction accurately stated the law. There is no basis to conclude that the jury may not have been misled by the incorrect instruction. Absent a claim and finding of harmless error, a new trial should be ordered.

In this case, the felony-murder instructions violated this Court's decision in *People v Aaron,* 409 Mich 672 (1980): a finding that the defendant committed or joined in the commission of a felony is insufficient alone to support an inference or conclusion that he acted with the requisite intent for murder; instructing the jury that it could find the defendant guilty of murder upon a determination that he participated in a robbery, relieved it of finding the individual culpability that is prerequisite to criminal responsibility for murder—that he acted with intent to kill, intent to cause great bodily harm, or with wanton and wilful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm.

## OPINION OF THE COURT

1. HOMICIDE — FELONY MURDER — INTENT — MALICE.

   Malice necessary to support a conviction of first-degree felony murder may not be inferred merely from an intent to commit the underlying felony; the intent is a factor, however, which may be used in determining the existence of malice (MCL 750.316; MSA 28.548).

2. HOMICIDE — FELONY MURDER — AIDING AND ABETTING — INTENT.

   The requisite intent required to support a conviction of aiding and abetting is either the intent required to support a conviction as a principal or participation in the crime with knowledge of the principal's intent (MCL 750.316; MSA 28.548).

3. HOMICIDE — FELONY MURDER — AIDING AND ABETTING — INTENT — MALICE.

   Malice necessary to support a conviction of an aider and abettor of first-degree felony murder is present where it is shown that the defendant knew that the principal intended to kill the victim of the underlying felony or to act in a manner which was likely to cause the death of or great bodily harm to the victim (MCL 750.316; MSA 28.548).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY LEVIN, J.

4. HOMICIDE — FELONY MURDER — JURY INSTRUCTIONS — INTENT.

> An instruction that a jury might infer from the defendant's participation in a robbery in which a victim was killed that he had the requisite intent to support a conviction of felony murder was error and was not remedied by conflicting general instructions on the law of homicide read as a whole, where the conflicting instructions left the jury to surmise which instructions accurately stated the law and there was no basis to conclude that it had not been misled.

5. HOMICIDE — FELONY MURDER — JURY INSTRUCTIONS — INTENT.

> A finding that a defendant committed or joined in the commission of a felony is insufficient alone to support an inference or conclusion that he acted with the requisite intent for murder; instructing a jury that it could find the defendant guilty of murder upon a determination that he participated in a robbery, relieved it of finding the individual culpability that is prerequisite to criminal responsibility for murder.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the plaintiff.

State Appellate Defender (by *James Krogsrud*) for the defendant.

WILLIAMS, C.J. This case involves a determination of the accuracy of jury instructions given on the issue of intent in a prosecution of felony murder and aiding and abetting the murder. Specifically, the first issue revolves around the following sentence: "If you find that the defendant consciously intended to commit, attempted to commit or assisted another in the crime of *robbery,* you *may infer* that he knowingly created a *very high risk of death* with knowledge that it probably would cause death." (Emphasis added.) While this sentence in isolation may be inaccurate, the instructions in their entirety correctly state the law.

The second issue involves a portion of the instructions given on the aiding and abetting charge which was not objected to in the trial court. We apply the standard of review for unpreserved objections and find that no manifest injustice occurred. We offer no opinion as to the result if this issue had been properly preserved.

The appeal raises two additional issues: (1) whether the trial court committed error requiring reversal by allowing the introduction of a rebuttal witness to testify about an issue raised by the defense and elaborated upon by the prosecutor in cross-examination; and (2) whether the trial court abused its discretion by allowing evidence of the defendant's three prior convictions to be used for impeachment purposes. We answer each of these issues in the negative, and we therefore affirm the defendant's conviction.

## I. FACTS

On the evening of July 18, 1980, Willie Espy, Sr., was found dead on the floor of his house with his hands tied behind his back and a large wound, made by several cuts with a sharp instrument, on the side of his neck. The house had been ransacked, and among the items missing were a large television set and a rifle.

The defendant, Jerome Kelly, and Lawrence Moses,[1] were linked to the killing by witnesses who saw them approaching the house, signaling to each other before entering the house, carrying a rifle and a large knife towards the house, and running from the direction of the decedent's house with a rifle and a large knife wrapped in a bloodied sheet. They were also seen loading a television set into a

[1] Lawrence Moses was convicted separately of felony murder after Kelly, and was sentenced to life imprisonment.

van parked a short distance from the Espy residence.

The defendant admitted to helping Moses remove the television set from the decedent's property and to having bloodstains on his pants, but denied any involvement in the killing.

The prosecution proceeded on one of two theories at trial: (1) that the defendant was guilty of first-degree felony murder, or (2) that the defendant aided and abetted the felony murder. Consistent with this, the jury instructions specified the elements of each theory as well as the broader requirements with respect to burdens of proof and the presumption of innocence. The relevant portions of the instructions follow:

> Now the defendant in this case is charged with murder in the first degree—felony murder. *The essential element of all murder is malice.* Now malice is a term with a special meaning in the law. *Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that his act would probably result in death.*
>
> Now there are two degrees of murder, and if you find that defendant is guilty of murder, it is your duty to state in your verdict whether the defendant is guilty of murder of the first degree or murder of the second degree. For murder of the first degree there must be proof beyond a reasonable doubt that the killing occurred as a result of the crime of robbery and that the defendant was at the time engaged in committing, attempting to commit or aiding another in the commission of that crime.
>
> * * *
>
> As I have told you before, there are two kinds of murder, first and second degree, and I will instruct you as to both. *Now, murder of either degree, as I have told you before, is the killing of one person*

*by another with malice. Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death, and that he did so under circumstances which did not justify, excuse or mitigate the crime.*

\* \* \*

You will first be instructed on murder of the second degree. Keep in mind that all of the elements of second degree murder are necessary to prove first degree murder.

\* \* \*

*Second, that his death was caused by an act of the defendant or because the defendant consciously created a very high risk of death to another with knowledge that it probably would cause death.*

\* \* \*

*Fourth, for murder you must find that the defendant consciously and knowingly performed the act which caused death. The defendant must have either intended to kill, that is, he must have done the act intending that it result in death or in great and serious bodily injury, or he must have knowingly created a very high risk of death with the knowledge that it probably would cause death.*

IF YOU FIND THAT THE DEFENDANT CONSCIOUSLY INTENDED TO COMMIT, ATTEMPTED TO COMMIT OR ASSISTED ANOTHER IN THE CRIME OF ROBBERY, YOU MAY INFER THAT HE KNOWINGLY CREATED A VERY HIGH RISK OF DEATH WITH KNOWLEDGE THAT IT PROBABLY WOULD CAUSE DEATH.

Now, you may also gain some insight into the intent with which an act is done by the way in which it is done.

Now, a gun is a dangerous weapon. There are some instruments which are dangerous because they are specifically so designed and are in themselves deadly, such as firearms, knives or bombs. Now, other instruments, though designed for peaceful and proper purposes, also may be dangerous weapons. The manner in which an instrument

is used or intended to be used in an assault determines whether or not it is a dangerous weapon. If an instrument is used in a manner reasonably calculated and likely to produce serious physical injury or death, it is a dangerous weapon. You may infer an intention to kill from the use of a dangerous weapon when it is used in a manner that the death of the person was plainly likely. Now, you may infer that a person intends the usual results which follows from the use of a dangerous weapon.

*Now, you must consider all of the facts and circumstances in determining the state of mind of the defendant at the time of the act. This may be inferred from the kind of weapon used, the nature of the wounds inflicted, the circumstances surrounding the killing, the acts, conduct and language of the accused or any other circumstance in evidence.*

In determining whether a person who has killed another is guilty of murder, the nature and extent of the injury or wrong which was actually intended must usually be of controlling importance. There cannot be a conviction of murder unless the injury intended was one of a very serious character which might naturally and commonly involve loss of life or grievous mischief.

*If all of the evidence does not convince you beyond a reasonable doubt that the defendant either intended to kill or consciously created a high risk of death with knowledge of the probable consequences, then you must find the defendant not guilty of this crime.*

*Now, the degree for murder must be so reckless and wrongful as to amount to a criminal purpose aimed against a person's life, and the defendant must have been conscious of that risk.*

\* \* \*

Now, it is the theory of the prosecution in this case that the defendant either directly committed the crime charged, that being felony murder, or that he intentionally aided or assisted another in the commission of that crime.

All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be convicted of the principal offense or as aiders and abettors. Before you may convict you must be convinced beyond a reasonable doubt.

First, that the defendant intended to commit the crime of robbery, either robbery unarmed or robbery armed at the time of giving the aid or encouragement.

Second, that the defendant performed acts or gave encouragement which aided or assisted the commission of the crime of robbery either before or at the time of the commission of the crime.

Third, that the crime of felony murder occurred as a result of this robbery.

FOURTH, THAT THIS CRIME WHICH OCCURRED, THAT IS THE FELONY MURDER, WAS FAIRLY WITHIN THE CRIMINAL PLAN AND THE DEFENDANT MIGHT HAVE EXPECTED THIS TO HAPPEN IN THE COURSE OF COMMITTING THE ROBBERY. [Emphasis added.]

During trial, defense counsel objected to that portion of the instruction involving the malice requirement of felony murder[2] (first portion of the

[2] "*Mr. Binion:* Your Honor, defense would like to object to the instruction 16, I believe, 2:03 at page 1671, your Honor, which is on the inference of malice. It is our contention, your Honor, that the case of People versus Aaron, recently decided, your Honor, by the Michigan Supreme Court and appears at 409 Mich Reports, page 672 [299 NW2d 304 (1980)]. I think, your Honor, that the import of the Aaron Decision is that inferences such as the one I think that this instruction involves, that is, that the mere participation in any aspect of the underlying felony. In this case I guess it would be any aspect from any kind of larceny. From that you can infer that the person had malice. I don't think your Honor, that that is what the Aaron Case permits. I would object to that particular instruction, your Honor. I think it is clear that our case law shows that if there is a conflict between the Michigan Criminal Jury Instructions and the case law, that it is the case law, your Honor, which is the determining factor.

"I would ask the Court to follow the case of People versus Aaron, your Honor, and note the conflict between the two and not give that particular instruction to the jury. I think it is going to confuse the jury, your Honor, and it is going to permit the jury to infer malice from my client, from his small involvement.

instructions in capitals above), but did not object
to the instructions given with respect to aiding
and abetting (second portion of the instructions in
capitals above). The jury convicted Kelly of felony
murder, MCL 750.316; MSA 28.548, and he was
sentenced to the mandatory life imprisonment.
The Court of Appeals affirmed the conviction on
March 11, 1983, in an unpublished decision. We
granted leave to appeal, instructing the parties to
"include among the issues to be briefed whether
the trial court's instructions were erroneous in
permitting a conviction of felony murder on an
aiding and abetting theory without a finding that
defendant possessed an intent to murder, *People v
Aaron,* 409 Mich 672 [299 NW2d 304] (1980)." 419
Mich 922 (1984).

II. APPLICABLE LAW WITH RESPECT TO JURY
INSTRUCTIONS

A. *Jury Instructions Should Be Reviewed in Their
Entirety*

In *People v Dye,* 356 Mich 271, 279; 96 NW2d
788 (1959), *cert den* 361 US 935 (1960), we enunci-
ated the standard under which we review jury
instructions. We stated that it was improper for
the appellant to extract

> several short excerpts from the entire context of
> the charge and discuss[ed] their claimed inadequa-
> cies at great length. Jury instructions in a crimi-
> nal case . . . must be read in their entirety.

See, also, *People v Dupie,* 395 Mich 483, 488-489;

*"The Court:* The instruction, the language that you are talking
about comes almost directly from Aaron. As a matter of fact, Aaron
says specifically that the jury may infer malice from the very thing
you are objecting to and all of the facts and circumstances, and
therefore, I am including it in the instruction. Anything else?"

236 NW2d 494 (1975). Numerous Court of Appeals decisions have also quite properly focused on the totality of the instructions given. See, *e.g., People v Ritsema,* 105 Mich App 602, 609-610; 307 NW2d 380 (1981); *People v Bailey,* 103 Mich App 619, 626; 302 NW2d 924 (1981); *People v Choate,* 88 Mich App 40, 45; 276 NW2d 862 (1979).

The Supreme Court of the United States has similarly stated:

> In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd v United States,* 271 US 104, 107 [46 S Ct 442; 70 L Ed 857] (1926). . . . [A] judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction. . . . [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. [*Cupp v Naughten,* 414 US 141, 146-147; 94 S Ct 396; 38 L Ed 2d 368 (1973).]

See, also, *United States v LaRiche,* 549 F2d 1088, 1093-1094 (CA 6, 1977), *cert den* 434 US 966 (1977) (quoting *Cupp* for the proposition that particular instructions must be viewed within the context of the entire charge).

B. *Review of Unobjected-to Errors*

This Court has stated that "instructional error

should not be considered on appeal unless the issue has been preserved by an objection to the instruction in the trial court." *People v Handley,* 415 Mich 356, 360; 329 NW2d 710 (1982). Relief will be granted absent an objection only in cases of manifest injustice. See, *e.g., People v Woods,* 416 Mich 581, 610; 331 NW2d 707 (1982); *People v Rand,* 397 Mich 638, 643; 247 NW2d 508 (1976); *People v Townes,* 391 Mich 578, 586; 218 NW2d 136 (1974). The United States Supreme Court has enunciated a similar test. It stated that "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v Kibbe,* 431 US 145, 154; 97 S Ct 1730; 52 L Ed 2d 203 (1976). Relief will be given only when necessary to avoid manifest injustice to the defendant.[3]

### III. APPLICATION OF THE LAW TO THE INSTRUCTIONS

#### A. *Felony-Murder Instructions*

In *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980), this Court held that

malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural ten-

[3] The following are examples of such injustice. See, *e.g., Townes,* 391 Mich 578, 588; 218 NW2d 136 (in which the court effectively removed one possible verdict from the jury's consideration); *People v Martin,* 392 Mich 553, 561; 221 NW2d 336 (1974), and *People v Allensworth,* 401 Mich 67, 70-71; 257 NW2d 81 (1977), *cert den* 435 US 933 (1978) (cases in which the court ruled as a matter of law on an element of the offense); *People v Liggett,* 378 Mich 706, 715; 148 NW2d 784 (1967) (judge repeatedly misidentified the joint defendants); *People v Lenkevich,* 394 Mich 117, 124; 229 NW2d 298 (1975) (court repeatedly misdefined self-defense in a murder trial).

dency of defendant's behavior is to cause death or great bodily harm. We further hold that malice is an essential element of any murder . . . whether the murder occurs in the course of a felony or otherwise.

We therefore decided that the malice necessary for a felony-murder conviction could not be inferred *merely* from the intent to commit the underlying felony. However, we went on to state:

The facts and circumstances involved in the perpetration of a felony *may* evidence an intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm; however, the conclusion must be left to the jury to infer from all the evidence. [Emphasis added. *Id.,* pp 728-729.]

Read in their entirety, the jury instructions at issue clearly do not require the jury to find the malice necessary for murder from the mere intention to commit the underlying felony. The felony is a factor the jury may use to find malice.

The defendant objects to the felony-murder instructions because the court at one point stated:

If you find that the defendant consciously intended to commit, attempted to commit or assisted another in the crime of robbery, you may infer that he knowingly created a very high risk of death with knowledge that it probably would cause death.[4]

---

4 This language clearly does not involve a burden-shifting presumption or a conclusive presumption. *At most,* the instructions can be read to raise a permissive inference. The United States Supreme Court in its most recent discussion of this distinction has stated:

"The court must determine whether the challenged portion of the instruction creates a mandatory presumption. . . . A mandatory pre-

This particular instruction was preceded by explicit and correct definitions of malice. (See the italicized portions of the charge *ante,* pp 266-269.) The court stated:

> The essential element of all murder is malice. . . . Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that his act would probably result in death.

An elaboration of this definition followed:

> Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death, and that he did so under circumstances which did not justify, excuse or mitigate the crime.

A correct definition of malice was then given for a third time in the paragraph immediately preceding the one in which the language objected to was used. More importantly, the court clarified any

sumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

"Mandatory presumptions must be measured against the standards of [*In re*] *Winship* [397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970)] as elucidated in *Sandstrom* [v *Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979)]. Such presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. . . . A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proven. Such inferences do not necessarily implicate the concerns of *Sandstrom.* A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (Citations omitted.) *Francis v Franklin,* 471 US 307; 105 S Ct 1965; 85 L Ed 2d 344, 353-354 (1985).

ambiguity in the instruction objected to by explicitly noting in the proximately following paragraphs the factors the jury had to consider in order to find malice. Specifically, the following instruction was given:

> [Y]ou must consider *all* of the facts and circumstances in determining the state of mind of the defendant at the time of the act. This may be inferred from the kind of weapon used, the nature of the wounds inflicted, the circumstances surrounding the killing, the acts, conduct and language of the accused or any other circumstances in evidence. [Emphasis added.]

Our responsibility as a reviewing court is to balance the general correct, clear tenor of the instructions in their entirety against the potentially misleading effect of a single sentence isolated by the defendant. *Dye,* 356 Mich 279; *Dupie,* 395 Mich 488-489. In doing so, we find that the instructions, as a whole, correctly informed the jury of the *Aaron* standard governing malice in felony murder and do not require the jury to have determined such malice only on the basis of the intent to commit the underlying felony.[5]

We are also aware that the trial judge was cognizant of the implications of *Aaron.* The court stated:

> *Aaron* says specifically that the jury may infer malice from the very thing you are objecting to [the facts of the underlying felony] and all of the facts and circumstances . . . .

[5] The Court of Appeals has reached a similar conclusion on the issue of malice, based on a reading of the instructions at issue in their entirety. *People v Ewing (On Remand),* 102 Mich App 81, 86; 300 NW2d 742 (1980). We note further that to the extent the jury found Kelly was the principal actor, given the circumstances of the murder, there was no question that the killer himself acted with malice. The only issue was whether Kelly was the principal.

A correct understanding of the applicable standard by the trial court further supports our belief that the instructions given were accurate.

Where instructions on malice in other cases were found to be incorrect, the inference of malice was made an *automatic* result once the intent to commit the underlying felony was found. (By contrast, the case before us raises at most a possible inference.) In *People v Thompson,* decided jointly with *Aaron,* the jury was instructed that if "the said defendant was perpetrating or attempting to perpetrate said assault upon the deceased, Mary Emma Hendry, with intent to rob, then it is not necessary for the state to prove a premeditated design or intent." The judge further explained that even though there was no intent to injure anyone, "the evil intent to commit the robbery carries over to make that crime murder in the first degree under the law in this state." *Aaron,* 409 Mich 687, n 3. In *People v Wright,* also decided with *Aaron,* the jury was instructed:

> For murder of the first degree there must be proof beyond a reasonable doubt that the killing occurred as a result of the crime of arson and that the defendant was at the time engaged in committing or attempting to commit, or was aiding another in the commission of that crime. [*Aaron,* 409 Mich 688, n 5.]

In *Aaron* itself, the instruction authorized the jury to convict the defendant of first-degree murder "if they found that defendant killed the victim during the commission or attempted commission of an armed robbery." *Aaron,* 409 Mich 688. In *People v Wilder,* 411 Mich 328; 308 NW2d 112 (1981), the instructions were given as follows:

> Now I know you have heard of a premeditated

killing. We are not concerned with that in this case, because the law supplies the premeditation and the deliberation if a person is killed in the perpetration of a robbery, or the attempt[ed] perpetration of a robbery. The prosecution does not have to prove premeditation and deliberation, *it is automatically supplied* because the law says that, if a person is killed in the perpetration or attempt[ed] perpetration of a robbery that is first-degree murder, felony. But you must be satisfied beyond a reasonable doubt that there was a robbery or the attempt[ed] perpetration of a robbery committed by these defendants, not by somebody else. And that's important. The prosecution must prove that they committed that act or attempted to commit that act of robbery and during that Mr. Reaves was killed. [Emphasis added. *Wilder,* 411 Mich 340-341.]

In the case now before us there is no similar mandatory language.

## B. *The Aiding and Abetting Instructions*

The aiding and abetting instructions given in this instance were not objected to at trial; therefore, the appropriate standard of review is whether manifest injustice has occurred. *Woods,* 416 Mich 610. While the instruction given on this issue was arguably erroneous, after a careful review of the record, we find no evidence of injustice.

The defendant argues that the aiding and abetting instructions given allowed the jury to convict him of felony murder on an aiding and abetting theory without explicitly requiring the jury to make a determination of his intent to aid and abet the murder. The language under point four provides as follows:

[T]hat this crime which occurred, that is the

felony murder, was fairly within the criminal plan and the defendant might have expected this to happen in the course of committing the robbery.

The defendant reads this as permitting the jury to apply an objective standard of foreseeability on the issue of intent. He concludes that conviction under this language violates the *Aaron* requirement that malice on the part of the defendant be found before any killing can be deemed "murder."

Before discussing the defendant's contention further, it is necessary to understand the elements of an aiding and abetting charge in Michigan. The Michigan statute, MCL 767.39; MSA 28.979, provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

The requisite intent is that necessary to be convicted of the crime as a principal. *Meister v People,* 31 Mich 99 (1875). In this instance, under *Aaron,* it therefore must be shown that the aider and abettor had the intent to kill, the intent to cause great bodily harm or wantonly and willfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm. *Aaron,* 409 Mich 733. Further, if the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with "wanton and willful disregard" sufficient to support a finding of

malice under *Aaron*.[6] This result is in accord with numerous decisions reached by the Court of Appeals over a considerable period of time. See, *e.g., People v Schaffer,* 129 Mich App 287, 291; 341 NW2d 507 (1983); *People v Turner,* 125 Mich App 8, 11; 336 NW2d 217 (1983); *People v Davenport,* 122 Mich App 159, 164; 332 NW2d 443 (1982); *People v Harris,* 110 Mich App 636, 643; 313 NW2d 354 (1981); *People v Wilbert,* 105 Mich App 631, 640; 307 NW2d 388 (1981); *People v Wirth,* 87 Mich App 41, 46; 273 NW2d 104 (1978); *People v Poplar,* 20 Mich App 132, 136; 173 NW2d 732 (1969).

The *Aaron* concerns are not implicated by this standard. In *Aaron,* we expressed concern for cofelons who, under the old felony-murder rule became involved in an unforeseen and unagreed-to murder. *Aaron,* 409 Mich 731. We stated:

> In the past, the felony-murder rule has been employed where unforeseen or accidental deaths occur and where the state seeks to prove vicarious liability of co-felons. In situations involving the vicarious liability of co-felons, the individual liability of each felon must be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for the unforeseen and unagreed-to results of another felon.

This concern is not implicated by an aiding and abetting standard which requires a finding that

[6] It is noted that in the order granting leave to appeal we stated the issue as "whether the trial court's instructions were erroneous in permitting a conviction of felony murder on an aiding and abetting theory without a finding that defendant possessed an intent to murder." As *Aaron* indicates, the malice necessary to support a murder conviction can be found by a "wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." Therefore it is clear that the *Aaron* rule is broader than our question implies.

the co-felon acted with malice. We do not address the defendant's contention that the actual instruction given does not require this level of intent to be found because the objection was not properly preserved. We review in this instance only to determine whether the defendant was subject to a manifest injustice.

Because the intent necessary for an aiding and abetting conviction is so overwhelmingly evident from the record, we find that no injustice has occurred. The entire criminal enterprise, including the robbery and the killing, was cooperative in nature. Eyewitness testimony established that Kelly and Moses signaled to each other prior to entering the house, headed in the direction of the house with a rifle and a knife, and left the house with a rifle and a knife wrapped in a bloodied sheet. They were observed loading a television set into a van. There was also testimony by a witness that Kelly had told him that he (Kelly) pushed Espy down while Moses tied him up. The defendant admitted having blood on his pants. The nature of the killing itself clearly demonstrates that it was neither accidental nor done without malice. The victim's hands were tied behind his back, and his throat was slit a number of times. Even assuming the defendant did not enter the house with the intent to murder, it is clear that he either formulated such an intent once inside the house, or at the *very least* became aware of his codefendant's specific intent at some point during these gruesome proceedings.

Defendant's testimony was contradicted by the witnesses and unsupported by the evidence. He stated that he was walking down the street when Moses threw a rifle to him and he followed with no knowledge of what was happening. He did, however, admit to agreeing to steal the television set,

and, on cross-examination, to entering the victim's enclosed porch.

In reviewing the record for evidence of manifest injustice to the defendant, we find none. Instead, we find the evidence of intent necessary to support an aiding and abetting conviction so overwhelming that even if the instructions are considered ambiguous no injustice is done to the defendant by allowing his conviction to stand.

## IV. THE ADMISSIBILITY OF REBUTTAL EVIDENCE

We find no merit in the defendant's assertion that the trial court exceeded the bounds of its discretion when it admitted the testimony of William Lester Espy, Jr., in rebuttal. We note as an initial matter that a specific objection to the admissibility of this testimony as improper rebuttal was not made at trial. We therefore review only to determine whether the defendant was subject to manifest injustice as a result of admitting the evidence. Not only do we find no such injustice, we find the testimony was properly admitted.

Rebuttal testimony may be used to "contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v DeLano,* 318 Mich 557, 570; 28 NW2d 909 (1947), *cert den* 334 US 818 (1948), quoting *People v Utter,* 217 Mich 74, 83; 185 NW 830 (1921). In this instance, the defendant's prior contact with the decedent and his son was brought up during direct examination by the defense. Further, the defendant testified on direct examination that he had gone to the Espys' house that evening to see if Willie Espy, Jr., was at home. It is clear that this placed the relationship between the defendant and the Espys at issue. The

prosecution's rebuttal evidence was therefore properly admitted.[7]

## V. ADMISSIBILITY OF PAST CONVICTIONS TO IMPEACH THE DEFENDANT

The defendant's contention that the trial court abused its discretion in allowing the prosecution to bring in evidence of his past convictions for attempted larceny in a building, attempted robbery, and larceny is clearly erroneous. The defendant challenged the admissibility of the prior convictions by arguing that they did not clearly bear on the issue of credibility, that their effect on the jury would be too prejudicial, and that their admission might cause him to refrain from taking the stand.

MRE 609(a)(2) provides that evidence of such convictions are admissible if "the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination."[8] The

---

[7] We find the defendant's reliance on the following cases to be misplaced. *People v Bennett,* 393 Mich 445, 449; 224 NW2d 840 (1975) (rebuttal evidence did not bear on an issue raised by the defense); *People v Losey,* 413 Mich 346, 351-353; 320 NW2d 49 (1982) (evidence involved either a collateral matter of material which should have been in the prosecution's case in chief); *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981) (evidence was on a collateral matter).

[8] "Rule 609. Impeachment by Evidence of Conviction of Crime

"(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination.

"(b) *Time limit.* Evidence of a conviction under this rule is not

trial court exercised its discretion and enunciated its reasons for allowing evidence of the prior convictions on the record. The court considered the defendant's motion to suppress the prior convictions twice. The first time, on a motion *in limine* on September 23, 1980, the court stated:

> . . . I would allow the prosecution to use the conviction for attempt [*sic*] larceny in a building whether he wishes to or not, attempt [*sic*] robbery unarmed and larceny from a person. The credibility is important, and this is not so prejudicial as to outweigh the probative value.

When the motion was raised again, the court stated:

> It becomes very obvious from what counsel has said that credibility is going to be an important factor in this case. . . . I know what the rule is and know that similar crimes ought not to be admitted when they will be so prejudicial that probative value becomes very small. In this particular incident, I'm convinced that the probative value outweighs the prejudicial effect. These are larcenous kinds of crimes. As I remember, there are a couple of felonies, all larcenies, and it goes directly to credibility and therefore, I deny the motion.

The trial court's decision was made after consideration of the relevant factors. See, *e.g., People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979); *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978). The court determined that evidence of the prior convictions was extremely relevant with respect to the defendant's credibility and that any

admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date."

potential similarity between the earlier convictions and the current case was outweighed by this probative value. The similarity of past crimes to the current case was further diminished because the defendant in effect admitted he had removed the television set, and the real issue was not the underlying theft, but his involvement in the murder. Most importantly, the defendant took the stand, thus obviating any fear that the use of the convictions for impeachment purposes might result in his refusal to testify.

We therefore determine that the admission of evidence of the prior convictions was certainly within the bounds of the trial court's discretion, and the defendant's contention otherwise is meritless.

## VI. CONCLUSION

The felony-murder instructions of the trial court accurately stated the law with respect to malice when read in their entirety. Any imperfection in the instructions given with respect to the intent necessary to be convicted of aiding and abetting a felony murder did not result in manifest injustice. The court, in allowing rebuttal evidence by the prosecutor and the use of evidence of the defendant's prior convictions for impeachment purposes, properly exercised its discretion.

For all the foregoing reasons, we uphold the felony-murder conviction of Jerome Kelly.

RYAN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with WILLIAMS, C.J.

LEVIN, J. (*concurring in part and dissenting in part*). I concur on the aiding and abetting issue because there was no objection to the instruction, and dissent on the felony-murder issue.

The error in instructing the jury that it might infer from Kelly's participation in the robbery that he "knowingly created a very high risk of death with knowledge that it probably would cause death"—and thus the requisite intent to convict him of murder (and, hence, because there was a robbery, felony murder)—was not, as stated in the opinion of the Court, remedied by the general instructions on the law of homicide.

I note at the outset, because of statements in the opinion of the Court, that the issues presented concern jury instructions, not the sufficiency of the evidence. There was, indeed, ample evidence from which a properly instructed jury could find that Kelly committed the offense of first-degree murder.

# I

Kelly was convicted of first-degree murder. The prosecution proceeded on the alternative theories that Kelly was the principal assailant, primarily responsible for the death of the victim, and that, if his accomplice in the robbery, Lawrence Moses, was the principal assailant, Kelly aided and abetted Moses in the commission of the statutory offense of felony murder.

On the aiding and abetting issue, the judge instructed the jury:

"Fourth, that this crime which occurred, that is the felony murder, was fairly within the criminal plan and the defendant might have expected this to happen in the course of committing the robbery."[1]

---

[1] This instruction was preceded by the following:
"Now, it is the theory of the prosecution in this case that the defendant either directly committed the crime charged, that being felony murder, or that he intentionally aided or assisted another in the commission of that crime.

## A

Kelly's lawyer did not object to this instruction. The instruction appears to be based on a misreading of language in an early Michigan case.[2] The deficiencies in the instruction are not, however, of such moment as to warrant a new trial absent objection.[3]

---

"All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be convicted of the principal offense or as aiders and abettors. Before you may convict you must be convinced beyond a reasonable doubt:

" 'First, that the defendant intended to commit the crime of robbery, either robbery unarmed or robbery armed at the time of giving the aid or encouragement.

" 'Second, that the defendant performed acts or gave encouragement which aided or assisted the commission of the crime of robbery either before or at the time of the commission of the crime.

" 'Third, that the crime of felony murder occurred as a result of this robbery.' "

[2] In *People v Knapp*, 26 Mich 112, 115 (1872), this Court said:

"There can be *no* criminal responsibility for anything not fairly within the common enterprise, and which might be expected to happen if occasion should arise for any one to do it." (Emphasis supplied.)

It does not follow that there *is* criminal responsibility for anything "fairly within the criminal plan" that the accused "might have expected" to happen. See *People v Foley*, 59 Mich 553; 26 NW 699 (1886).

The instruction given followed the format of CJI 8:1:04, Aiding and Abetting in Separate Crime Within the Scope of the Enterprise. The accompanying use note prepared by the Michigan State Bar Special Committee on Standard Criminal Jury Instructions reads:

"This instruction is intended for use where some felony other than that contemplated in the original felonious enterprise occurs. It is *not* recommended for use when the new felony requires a specific intent. See *People v Aaron*, 409 Mich 672, 708-713; 299 NW2d 304 (1980). For felony-murder, see the felony-murder instructions, Chapter 16." See n 13. (Emphasis supplied.)

[3] The opinion of the Court sets forth the applicable standard of review for unobjected-to errors as whether "manifest injustice has occurred." The opinion does not attempt to define "manifest injustice"; nor can a standard be derived from the examples set out in n 3.

In *People v Woods*, 416 Mich 581, 610; 331 NW2d 707 (1982), relied on in the opinion of the Court, this Court gave some content to the term when it said that "[f]inding no evidence of actual prejudice," it could not agree with the appellant that the instruction "created manifest injustice."

What is meant by "manifest injustice" has never been adequately

## B

After stating that because there was no objection, this Court need only review the instruction to determine whether there was "manifest injustice,"[4] the opinion of the Court, in *obiter dictum,* proceeds to discuss the law of aiding and abetting.[5]

The Court acknowledges that the instruction is "arguably erroneous."[6] It states that the intent to be convicted as an aider and abettor of murder is the intent of a principal, one of the three intents stated in *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980), as requisite to a conviction of murder: "intent to kill," "intent to cause great bodily harm," intent "wanton[ly] and willful[ly to] disregard [ ] the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm."[7]

The opinion, picking up on the third "wanton and willful disregard" clause, continues that if a person charged as an aider and abettor "participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with 'wanton and willful disregard' sufficient to support a finding of malice under *Aaron.*"[8]

I would agree that evidence that one has participated in committing an offense other than murder with knowledge that an accomplice intended in

explained so as to provide a clear understanding to the bench and bar of what is intended. Until the Court is prepared to explain what it means when it uses the words "manifest injustice" in this context, it should avoid using an expression whose content is undefined.

[4] *Id.*

[5] *Ante,* pp 278-280.

[6] *Ante,* p 277.

[7] The Court does not, possibly because it was not necessary for decision, evaluate whether the aiding and abetting instruction required one of these levels of intent.

[8] *Ante,* pp 278-279.

the perpetration of the offense to kill or cause great bodily harm will generally be sufficient to support a finding of aiding and abetting murder should the accomplice commit that offense. The Court's statement can be read, however, as establishing a rule of law leaving no room for the trier of fact to decide whether the person charged as an aider and abettor knowingly and intentionally did so, and is not adequate for the purpose of instructing a jury.

The Court says that its statement is in accord with "numerous decisions reached by the Court of Appeals over a considerable period of time."[9] The only case cited in which the defendant was charged with aiding and abetting a murderous assault is *People v Poplar,* 20 Mich App 132, 136; 172 NW2d 732 (1969). There the Court of Appeals said that "[w]here a crime requires the existence of a specific intent, an alleged aider and abettor cannot be held as a principal unless he himself possessed the required intent or unless he *aided and abetted* in the perpetration of the crime knowing that the actual perpetrator had the required intent." The *Poplar* formulation is circular—one is an aider and abettor if he aided and abetted—and therefore is somewhat confusing, albeit perhaps literally not erroneous.

### C

The opinion of the Court reviews the evidence and finds:

> Even assuming the defendant did not enter the house with the intent to murder, it is clear that he either formulated such an intent once inside the house, or at the *very least* became aware of his codefendant's specific intent at some point during

---

[9] *Ante,* p 279.

these gruesome proceedings. [Emphasis in original.]

Manifestly, it would not be enough that the person accused as an aider and abettor of murder became aware of the principal's intent to murder unless thereafter the accused aided and abetted the principal in committing the murder.

## D

The ultimate question is whether the accused acted with intent to aid and abet the commission of the offense. Knowledge or participation is evidence that supports an inference of an intent to aid and abet, but neither knowledge nor participation, nor both, are sufficient. The statements in the majority opinion blur the difference between what constitutes sufficient evidence and how a lay jury should be instructed.

The role of evidence of knowledge and participation, in the context of jury instructions, was recently considered by the Supreme Court of California. *People v Beeman,* 35 Cal 3d 547, 555; 199 Cal Rptr 60; 674 P2d 1318 (1984). *Beeman* rejected, *People v Ellhamer,* 199 Cal App 2d 777; 18 Cal Rptr 905 (1962), the proposition stated in *Ellhamer* and quoted in *Poplar* that "the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose," and a jury instruction that "[a] person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime." The California court said, "Intent is what must be *proved;* from a person's action with knowledge of the purpose of the perpetrator of a crime, his

intent to aid the perpetrator can be *inferred.*"[10] (Emphasis in original.) The court continued that an appropriate instruction would inform the jury that a person aids and abets when acting with "(1) knowledge of the unlawful purpose of the perpetrator, *and* (2) the intent or purpose of committing, encouraging or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (Emphasis added.) Knowledge of the criminal purpose of the principal is an element necessary to support a finding of an intent to aid and abet, but is not alone sufficient.

**E**

The opinion of the Court states that the concerns expressed in *Aaron* of holding a co-felon criminally responsible for "an unforeseen and unagreed-to murder" are "not implicated by an aiding and abetting standard which requires a finding that the co-felon [aider and abettor] acted with malice."[11] I would agree if it were clearly stated that the jury must find that the person accused as an aider and abettor had the requisite intent to kill, to cause great bodily harm, or to wantonly and wilfully disregard that the natural tendency of his behavior was to cause death or great bodily harm.

The unobjected-to instruction does not require a finding by the jury that Kelly either himself intended to commit murder or that he knew of his coparticipant's intent to do so. A juror might have been misled by the language—"*fairly* within the criminal plan" and "*might have expected* this to happen,"—to believe that an objective standard of

[10] *People v Beeman,* 35 Cal 3d 547, 555-558; 199 Cal Rptr 60; 674 P2d 1318 (1984).

[11] *Ante,* pp 279-280.

foreseeability applies.[12] The term "criminal plan" does not distinguish whose plan—Kelly's or his coparticipant, Moses'—the jury must consider.

There is a world of difference between an inquiry whether Kelly intended murder and an inquiry whether a reasonable person "might have expected [murder] to happen."

### F

Implicit in the instruction is the notion that an agreement to commit robbery is necessarily an undertaking involving a significant risk that death or grievous bodily harm will result. A juror who watches the local news might readily agree that a killing is "fairly within" a criminal plan to commit a robbery. The United States Supreme Court, however, relying in *Enmund v Florida,* 458 US 782, 799-800; 102 S Ct 3368; 73 L Ed 2d 1140 (1982), on statistics in the commentary accompanying the Model Penal Code showing that this assumption is wrong, held that the imposition of the death penalty on a person who aids and abets a felony in the course of which murder is committed by another, but who does not himself kill, attempt to kill, or intend to kill, is violative of the Eighth Amendment. The Court said:

> It would be very different if the likelihood of a killing in the course of a robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony. But

[12] Glanville Williams rejects imposing criminal liability on the basis of an objective standard. In his discussion of the responsibility of secondary parties for probable consequences he states:

"[A] negligent failure to foresee the course of events [does not make] a secondary party responsible for a crime of different legal character from that contemplated. Such an extension of responsibility would be inconsistent with the rule requiring secondary parties to have full *mens rea.*"

Williams, Criminal Law General Part (2d ed), p 402.

competent observers have concluded that *there is
no basis in experience for the notion that death so
frequently occurs in the course of a felony for
which killing is not an essential ingredient that
the death penalty should be considered as a justifi-
able deterrent to the felony itself. . . .* This con-
clusion was based on three comparisons of robbery
statistics, each of which showed that only about
one-half of one percent of robberies resulted in
homicide.[23] The most recent national crime statis-
tics strongly support this conclusion.[24] [Emphasis
supplied.]

---

[23] The statistics relied upon by the American Law Institute
may be summarized as follows:

| Date & Location | No. of Robberies | Robberies Accompanied by Homicide | % |
|---|---|---|---|
| Cook County, Ill 1926-1927 | 14,392 (est.) | 71 | .49 |
| Philadelphia, Pa 1948-1952 | 6,432 | 38 | .59 |
| New Jersey 1975 | 16,273 | 66 | .41 |

Model Penal Code § 210.2, Comment, p 38, n 96.

[24] An estimated total of 548,809 robberies occurred in the
United States in 1980. *U. S. Dept. of Justice, Federal Bureau of
Investigation, Uniform Crime Reports* 17 (1981). Approximately
2,361 persons were murdered in the United States in 1980 in
connection with robberies, id., at 13, and thus only about 0.43%
of robberies in the United States in 1980 resulted in homicide. See
also Cook, The Effect of Gun Availability on Robbery and Robbery
Murder, in 3 R. Haveman & B. Zellner, Policy Studies Review
Annual 743, 747 (1980) (0.48% of all robberies result in murder).

---

As written, the instructions reinforce the as-
sumption, rejected in *Aaron,* of an experiential
link between the commission of or intent to com-
mit the offense of robbery and a resulting although
not necessarily intended killing.

## II

Turning to the felony-murder issue, the judge

instructed the jury, over defense counsel's objection, that it might infer from participation in a robbery the requisite intent to convict Kelly of murder under the third clause of the *Aaron* formulation.

> If you find that the defendant consciously intended to commit, attempted to commit or assisted another in the crime of robbery, you may infer that he knowingly created a very high risk of death with knowledge that it probably would cause death.[13]

## A

The opinion of the Court says that "[w]hile this sentence in isolation may be inaccurate," read as a whole the murder instructions accurately stated the law.[14]

The "read as a whole" approach might be appropriate where the judge gives an incomplete instruction or fails to give an accurate instruction requested on an aspect of the matter otherwise adequately covered,[15] but a different rule applies

[13] The language was taken from CJI 16:2:03, which subsequently was revised to read before deletion on September 16, 1985:

"(1) In determining whether [*the/a*] defendant acted wilfully and wantonly, you may consider whether the defendant intentionally set in motion a force likely to cause death or great bodily harm.

"(2) If you find that the defendant committed the charged crime of [*state felony*], you may also consider the nature of that crime, the way it was committed, and the circumstances surrounding its commission." (Bracketed material and emphasis in the original.)

[14] The Court cites *People v Dye,* 356 Mich 271, 279; 96 NW2d 788 (1959). The report in that case does not state the nature of the claimed instructional error.

[15] The majority cites *People v Dupie,* 395 Mich 483, 488; 236 NW2d 494 (1975), where the trial court had instructed the jury that to convict the defendant of unarmed robbery it "must appear that the defendant feloniously . . . stole . . . ." The defendant contended the the word "feloniously" did not adequately instruct the jury on specific intent. The instruction in *Dupie,* unlike the instruction in the instant case, was not erroneous.

where the jury is given conflicting instructions:[16] "[W]here conflicting instructions are given, one erroneous and the other without error, it may be presumed that the jury followed that instruction which was erroneous."[17] The rationale of this presumption becomes clearer through illustration: If you tell a child that two plus two equals five and then tell the child that two plus two equals four, without explaining that the first equation was wrong, the child does not know which is correct. When it comes to the law of homicide, a lay jury is like a child. Both the concepts of the law of homicide and the arcane jargon the law has, over the centuries, developed to explain them are so complex that even one experienced in the subject will generally need carefully to parse the language of the law each time he adverts to the subject.

A juror seeking to decipher the meaning of instructions on the murky conception, "malice aforethought," might well seize upon an instruction which allows him to find that elusive concept[18] on evidence that the accused had an intent to assist another in committing a robbery.

---

The rule that the whole charge must be construed together to determine if it was correct was applied in *People v Williams,* 208 Mich 586, 592; 175 NW 187 (1919). There also the charge was not itself misleading or erroneous. This Court said, "We cannot conceive that there was any likelihood of the jury being led to a wrong conclusion by the charge concerning the question of reasonable doubt, or burden of proof."

[16] See *People v Burkard,* 374 Mich 430, 437; 132 NW2d 106 (1965), where the judge gave erroneous instructions on self-defense (requiring that the jury be satisfied beyond a reasonable doubt that an assault *in fact* was about to be made), but then later "with precision and accuracy" gave the proper test to be applied (honest belief of assault). This Court said, "[W]e may not speculate on what effect the patently erroneous excerpt may have had, in the absence of the trial judge himself instructing the jury to disregard it" and reversed the conviction.

[17] *People v Eggleston,* 186 Mich 510, 514-515; 152 NW 944 (1915).

[18] In *People v Woods,* n 3 *supra,* 626, this Court directed that the term "malice" no longer be used in "trial instructions."

Kelly admitted his involvement as an aider and abettor in the robbery. The instruction relieved the jury of the task of deciding whether Kelly or his accomplice Moses was the assailant who fatally stabbed the victim—a determination generally of critical importance under *Aaron.*[19]

## B

The Court's read-as-a-whole analysis makes it unnecessary for it to decide whether the instruction, which read "in isolation may be inaccurate,"[20] was or was not accurate. In my view, it is necessary to so decide because, if the instruction is inaccurate, the rule for conflicting instructions becomes applicable and, absent harmless error,[21] a new trial should be granted.

In explaining why the instruction, read as a whole, is accurate, the Court misstates *Aaron.* The Court says that "[r]ead in their entirety, the jury instructions at issue clearly do not require the jury to find the malice necessary for murder from the mere intention to commit the underlying felony. The *felony* is a factor the jury may use to find malice."[22] (Emphasis added.)

In *Aaron,* however, this Court ruled that a jury may *not* find the requisite intent for murder from the intent to commit the underlying felony alone.[23] *Aaron* did not say the *"felony* is a factor" from which the jury may infer the requisite intent; *Aaron* said rather that the *"facts and circum-*

---

[19] Although Kelly was seen carrying a rifle, the gun was not fired. The fatal injury was inflicted by a knife.

[20] *Ante,* p 264.

[21] The majority does not in terms say that any error was harmless; nor does the prosecutor's brief ask that the conviction be affirmed on the ground that any error in the felony-murder instruction was harmless.

[22] *Ante,* p 273.

[23] 409 Mich 730.

*stances* involved in the perpetration of a felony may evidence" the requisite intent.[24]

There is nothing in the instructions in the instant case that suggests that the jury must consider "facts and circumstances" other than the intent to commit the robbery. Kelly admitted his involvement in the robbery, but denied any involvement in the killing.[25] The jury, following the erroneous instruction, could have convicted him of felony murder simply because he admittedly participated in the robbery.

The Court also misreads *Aaron* if it is suggesting that *Aaron* is limited to those situations where the instruction makes the finding of the requisite intent mandatory from the intent to commit the felony. The majority distinguishes *Aaron* and the two companion cases decided with *Aaron,* in which the instructions were found to be incorrect, on the ground that there "the inference of malice was made an *automatic* result once the intent to commit the underlying felony was found." (Emphasis in original.) "By contrast," the majority says that

[24] 409 Mich 728.

See also the excerpt quoted in *Aaron* from the commentary to Hawaii's murder statute which specifically abolishes the felony-murder doctrine:

" 'Even in its limited formulation the felony-murder rule is still objectionable. It is not sound principle to convert an accidental, negligent, or reckless homicide into a murder simply because, without more, the killing was in furtherance of a criminal objective of some defined class. Engaging in certain penally-prohibited behavior may, of course, evidence a recklessness sufficient to establish manslaughter, or a practical certainty or intent, with respect to causing death, sufficient to establish murder, but *such a finding is an independent determination which must rest on the facts of each case.*' " 409 Mich 703. (Emphasis supplied.)

[25] Kelly testified that he had nothing to do with the killing—was not present and did not know of the killing—but admitted that he later aided his brother-in-law, Moses, in moving a television set off the decedent's porch and admitted that he had bloodstains on his pants. Two witnesses testified to the contrary, stating that both Moses and Kelly had said that Kelly had pushed the decedent down while Moses had tied him down.

the instructions in the instant case raised "at most
a possible inference."[26]

*Aaron* was not directed only against the manda-
tory inference of the common-law felony-murder
rule, but also against a permissible inference. It
was directed against convicting an accused of mur-
der solely on evidence of participation in another
felony:

> We believe that it is no longer acceptable to
> equate the intent to commit a felony with the
> intent to kill, intent to do great bodily harm, or
> wanton and willful disregard of the likelihood that
> the natural tendency of a person's behavior is to
> cause death or great bodily harm.[27]

In *Aaron,* this Court, in so many words, said
that a jury "may not find malice from the intent
to commit the underlying felony alone":

> Abrogation of this rule does not make irrelevant
> the fact that a death occurred in the course of a
> felony. A jury can properly *infer* malice from
> evidence that a defendant intentionally set in
> motion a force likely to cause death or great bodily ·
> harm. Thus, whenever a killing occurs in the
> perpetration or attempted perpetration of an in-
> herently dangerous felony, in order to establish
> malice the jury may consider the "nature of the
> underlying felony and the circumstances surround-
> ing its commission." If the jury concludes that
> malice existed, they can find murder and, if they
> determine that the murder occurred in the perpe-
> tration or attempted perpetration of one of the
> enumerated felonies, by statute the murder would
> become first-degree murder. [Citations omitted.]
>     *The difference is that the jury may not find*

---

[26] *Ante,* p 276.
[27] 409 Mich 727-728.

*malice from the intent to commit the underlying felony alone.* [Emphasis supplied.][28]

This Court additionally said in *Aaron:*

A defendant who only intends to commit the felony does not intend to commit the harm that results and may or may not be guilty of perpetrating an act done in wanton or willful disregard of the plain and strong likelihood that such harm will result. Although the circumstances surrounding the commission of the felony may evidence a greater intent beyond the intent to commit the felony, or a wanton and willful act in disregard of the possible consequence of death or serious injury, *the intent to commit the felony, of itself, does not connote a "man-endangering-state-of-mind."* Hence, we do *not* believe that it constitutes a sufficient *mens rea* to establish the crime of murder.[29]

One would think that after *Aaron* an accused would be entitled to an instruction that the jury may *not* infer, solely from the commission or attempted commission of a robbery, either intent to kill, intent to do great bodily harm, or wanton and wilful disregard of the likelihood that the natural tendency of the accused's behavior is to cause death or great bodily harm.

C

The felony-murder instruction given in the instant case violates the dictates of *Aaron* in three respects. First, as just discussed, a finding that the accused committed or joined in the commission of a felony is not alone sufficient under *Aaron* to support an inference or conclusion that he acted with the requisite intent for murder.

28 409 Mich 729-730.
29 *Id.,* 728.

Second, the instructions, by permitting the jury to find Kelly guilty of murder on a finding that he participated in a robbery, relieved it of finding the individual culpability that is, under *Aaron,* prerequisite to criminal responsibility for murder:

> "If one had to choose the most basic principle of the criminal law in general . . . it would be that criminal liability for causing a particular result is not justified in the absence of some culpable mental state in respect to that result . . . ."
>
> The most fundamental characteristic of the felony-murder rule violates this basic principle in that it punishes all homicides, committed in the perpetration or attempted perpetration of proscribed felonies whether intentional, unintentional or accidental, without the necessity of proving the relation between the homicide and the perpetrator's state of mind. This is most evident when a killing is done by one of a group of co-felons. The felony-murder rule completely ignores the concept of determination of guilt on the basis of individual misconduct. The felony-murder rule thus "erodes the relation between criminal liability and moral culpability." [*Id.,* 708. Citation omitted.]

Third, the jury was relieved of deciding whether Kelly acted with intent to kill, intent to cause great bodily harm, or with wanton and wilful disregard.

All would probably agree that it is not reasonable to infer either intent to kill or intent to do great bodily harm solely from evidence that the accused participated in an armed robbery. To hold otherwise would mean that there would be sufficient evidence to convict of assault with intent to murder and of assault with intent to do great bodily harm less than murder on evidence alone that the accused pointed a gun and announced a holdup.

The crux of the matter is whether the third clause—abbreviated in the objected-to instructions as "knowingly creat[ing] a very high risk of death with knowledge that it probably would cause death"—includes or comprehends conduct consisting of no more than participation in an armed robbery.

The third clause appears to have taken on a settled meaning, involving not just the threat of force, but the actual use of force. In all the cases cited by Professors LaFave and Scott in their discussion of the third clause, where the defendant's conduct was found sufficient to justify a finding of "reckless disregard for human life," the defendant had used—he had not merely threatened to use—force; he either intentionally propelled an object resulting in death—most often a bullet or a car—or, in one case, shook the victim (an infant) to death:[30]

---

[30] The following cases are representative of the cases cited by Professors LaFave and Scott:

In *People v Jernatowski,* 238 NY 188, 192; 144 NE 497 (1924), the firing of two or more shots into a house with knowledge that it was occupied by human beings "evinced a wicked and depraved mind regardless of human life," sufficient to support a conviction of murder. Similarly, shooting into a moving train and killing a brakeman whom the defendant had never seen "evince[d] a heart regarless [sic] of social duty and fatally bent on mischief" (*Banks v State,* 85 Tex Crim 165, 166; 211 SW 217 [1919]), as does a police officer's attempt forcibly to stop an automobile on the highway by shooting at the occupied vehicle. *Wiley v State,* 19 Ariz 346; 170 P 869 (1918). In *Brinkley v State,* 233 A2d 56, 58 (Del, 1967) the defendant fired into a two-hundred square foot area with a high-powered rifle, not aiming directly at a woman yet pointing in her general direction. She died when bullets ricocheted off the bed on which she was sitting. The court said that the defendant "must have known that bullets ricochet in unpredictable directions upon hitting hard substances" and affirmed his conviction of murder. In *Commonwealth v Malone,* 354 Pa 180; 47 A2d 445 (1946), the defendant pointed a .32 caliber revolver, known to contain one bullet, against the vital part of a person, and pulled the trigger three times in a game of Russian roulette resulting in the discharge of the gun and the death of the other person.

In *Mayes v People,* 106 Ill 306 (1883), the defendant threw a heavy glass tumbler in the direction of his wife, who was carrying a lighted

The following types of conduct have been held, under the circumstances, to involve the very high degree of unjustifiable homicidal danger which will do for depraved-heart murder; firing a bullet into a room occupied, as the defendant knows, by several people; shooting into the caboose of a passing train or into a moving automobile, necessarily occupied by human beings; throwing a beer glass at one who is carrying a lighted oil lamp; playing a game of "Russian roulette" with another person; shooting at a point near, but not aiming directly at, another person; driving a car at very high speeds along a main street; shaking an infant so long and so vigorously that it cannot breathe. [LaFave & Scott, Criminal Law, § 70, p 543.]

*Aaron,* consistently, states:

Abrogation of [common-law felony murder] does not make irrelevant the fact that a death occurred in the course of a felony. A jury can properly infer malice from evidence that a defendant intentionally *set in motion a force likely to cause death or great bodily harm.*[31] [Emphasis supplied.]

One may create a high or very high risk of death by firing a gun at an area where there may be one or more persons. Threatening a person with a loaded gun does not, however, alone justify an inference that the actor knowingly created such a

---

oil lamp, which caused the oil to ignite and burn, causing her death. This was held to be murder, whether he intended the tumbler to hit his wife or some other person or whether, without any specific intent, he threw the glass with general malicious recklessness, disregarding any and all consequences.

In *Regina v Ward* [1956] 1 QB 351, 352, the defendant shook a child "us[ing] his full force" to make her be quiet which resulted in her death; this was held to justify a conviction of murder.

[31] 409 Mich 729.

risk of death with knowledge that it would *probably* cause death.[32]

It does not denigrate the seriousness of robbery to recognize that while armed robbers do all too frequently fire their weapons, a killing rarely is the consequence of robbery. The data relied on by the United States Supreme Court in *Enmund,* discussed in Part I(F), shows that it is less than "probable" that a killing will result from a robbery.[33]

A jury cannot properly be instructed that it may, from evidence alone that the accused participated in a robbery, infer he had knowledge that his conduct would "probably" cause death or that he wantonly and wilfully disregarded the "likelihood" that the "natural" tendency of his behavior was to cause death or great bodily harm.

## III

In sum, the instruction was erroneous, and Kelly's lawyer duly objected. The judge's "correct understanding"[34] of *Aaron* is of interest, but is not curative under the circumstance that he did not communicate a "correct understanding" to the jury. The jury was left to surmise whether the general instructions on the law of homicide or the objected-to incorrect instruction accurately stated the law. We have no basis whatsoever for concluding that the jury may not have been misled by the

---

[32] The instruction is conceptionally inconsistent with the statute (MCL 750.329; MSA 28.561) that provides that a person who causes the death of another by the discharge of a firearm pointed or aimed intentionally is guilty of the crime of manslaughter if he acted without "malice." The instruction permits the jury to find murderous intent from conduct that the statute recognizes may not have been prompted by such intent.

[33] "It would be very different if the likelihood of a killing in the course of a robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony." 458 US 799.

[34] *Ante,* p 276.

incorrect instruction. Absent a claim[35] and finding of harmless error, a new trial should be ordered.

---

[35] See n 21.