PEOPLE v FREEDLAND

Docket No. 99983. Submitted October 4, 1988, at Detroit. Decided August 7, 1989. Leave to appeal applied for. ·

Dr. Joel Freedland was convicted of one count of conspiracy to commit Medicaid fraud and twenty-two counts of Medicaid fraud, Recorder's Court of Detroit, Thomas E. Jackson, J. Defendant appealed, alleging instructional errors and error in allowing evidence obtained through a grand jury subpoena.

The Court of Appeals *held:*

1. Since defendant did not object to the jury instructions at trial, relief is given only to avoid manifest injustice. Reviewing the instructions as a whole, the Court found no manifest injustice.

2. Defendant's allegation of evidentiary error was addressed by the Court of Appeals in an earlier interlocutory appeal. The law of the case doctrine applied since there had been no material changes in the facts since the prior appeal.

Affirmed.

R. R. LAMB, J., concurred in the result, but wrote to take issue with the majority's holding that a jury instruction was improper but harmless. He would hold that the instruction was warranted by the evidence.

1. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL — PRESERVING QUESTION.

Relief from unobjected-to jury instructions in a criminal case will be given on appeal only if necessary to avoid manifest injustice; in deciding whether manifest injustice occurred, the reviewing court should review the instructions as a whole.

2. CRIMINAL LAW — JURY INSTRUCTIONS — DUE PROCESS — BURDEN OF PERSUASION.

A jury instruction that shifts the burden of persuasion to the

REFERENCES

Am Jur 2d, Appeal and Error §§ 623, 756; Trial § 756.

Erroneous decision as law of the case on subsequent appellate review. 87 ALR 2d 271.

Supreme Court's review as to prejudicial effect in criminal case of erroneous instructions to jury involving burden of proof or presumptions. 92 L Ed 2d 862.

defendant on the elements of the crime is erroneous because it violates a defendant's constitutional right to due process.

3. Judgment — Appeal — Law of the Case.

A question of law decided by an appellate court will not be differently decided on a subsequent appeal in the same case where the facts remain materially the same.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Raymond O. Howd,* Assistant Attorney General, for the people on apeal.

*Neil H. Fink* and *Mark J. Kriger,* for defendant.

Before: Doctoroff, P.J., and Shepherd and R. R. Lamb,* JJ.

Shepherd, J. Defendants, Dr. Joel Freedland and Griggs Clinic, P.C., were tried jointly on charges of conspiracy to commit Medicaid fraud, MCL 400.606; MSA 16.614(6), and Medicaid fraud, MCL 400.607; MSA 16.614(7). The other alleged coconspirators, Drs. Tocco and Kelly, entered guilty pleas to lesser charges in exchange for their testimony against defendants. A jury found defendants guilty of one count of conspiracy and twenty-two counts of Medicaid fraud. By the time of sentencing, the clinic was dissolved. Defendant Freedland was fined $50,000 and sentenced to five to ten years imprisonment for the conspiracy conviction and concurrent terms of two to four years imprisonment for the Medicaid fraud convictions. Defendant appeals as of right, challenging the jury instructions and raising one evidentiary issue. We affirm.

During 1981, Drs. Tocco and Kelly submitted false Medicaid claims to the state for x-ray and osteopathic manipulative therapy (OMT) services

---

* Circuit judge, sitting on the Court of Appeals by assignment.

provided at Griggs Clinic. The clinic's services included a large low back pain practice. It was operated by Dr. Freedland, who hired Drs. Tocco and Kelly and instructed them on the protocol to follow for all new patients. From a technical standpoint, both doctors understood that they could deviate from the protocol. However, Dr. Tocco testified that it was clear that he was expected to order all procedures in the protocol and Dr. Kelly testified that she did not think she could stay employed by defendant if she consistently deviated from the protocol.

The new patient protocol required prescribing Talwin and Valium for outpatients, on whom a full set of x-rays, numerous diagnostic laboratory tests and procedures (the comprehensive profile), and an OMT would be done and billed to Medicaid. An OMT is a technique used to correct abnormal bodily motions or restrictions by manipulating muscles, joints, etc. When Dr. Kelly applied for the job in 1981, she was near bankruptcy. Dr. Kelly twice informed defendant that she did not feel qualified to do OMTs and was told she would not have to do so. She was also advised that she need not apply if she had a problem prescribing a lot of Talwin and Valium. Once hired, Dr. Kelly ordered the protocol for new patients even when not medically necessary. Two-week prescriptions of Talwin and Valium were given to every patient. Dr. Kelly only performed OMTs once or twice, but she charted OMTs for every patient because it was clear that defendant expected her to do so. At one point, Dr. Kelly discussed the lack of OMTs with defendant, who responded "What is an OMT anyway? . . . A patient walks in a room. You follow them. You watch their head follow you and you watch the range of motion in their neck."

Dr. Tocco, who was hired in 1980, similarly

testified that he was instructed to and did order the protocol for all new patients, even if unnecessary. Defendant told him to write up a diagnosis to justify ordering the tests. Dr. Tocco performed very few OMTS because he had very little use of his left arm and wore a wrist brace, but charted that he performed the OMT anyway. Dr. Tocco claimed that he ordered unnecessary services and billed for procedures not done because defendant wanted him to and he liked the money he was paid to do it.

Both Drs. Tocco and Kelly were hired at a salary of $78,000, which was paid by the clinic. For purposes of billing Medicaid, however, Drs. Tocco and Kelly enrolled in the Medicaid program individually pursuant to defendant's instructions. They were issued individual provider identification numbers by the state and both authorized a third-party billing service to submit Medicaid claims to the state on their behalf. Under this arrangement, Drs. Tocco and Kelly completed patient charts and indicated the services performed for the Medicaid patients. The patient charts were reviewed by billing clerks and the billing information transferred to forms provided by the third-party service. The forms were given to the third-party service which then put the information on a computer tape. The tape was sent to Medicaid, which processed the information and issued state treasury warrants made payable to Dr. Tocco or Dr. Kelly, in care of defendant, for services rendered. Defendant's office manager received the warrants, used signature stamps of Drs. Tocco and Kelly to endorse their respective warrants, and deposited the warrants into the clinic's bank account.

According to Corrine McCall, one of the clinic's billing clerks, defendant instructed her directly regarding how to bill for certain procedures and

patients. On one occasion, McCall was instructed to bill complete spinal x-rays as four separate x-rays instead of one complete procedure because of its more favorable Medicaid reimbursement. On another occasion, when Medicaid lowered the amount that it would pay for some testing, defendant took the time to find out which tests would be paid at a higher rate and changed the comprehensive profile to include them. Another billing clerk, Lola Holton, testified that defendant instructed her concerning OMT billings "to note that everyone that comes through the door would have their neck cracked and make sure I bill it."

The conspiracy and fraud statutes[1] underlying defendant's convictions provided:

(1) A person shall not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false, fictitious, or fraudulent claim under Act No. 280 of the Public Acts of 1939, as amended. [MCL 400.606; MSA 16.614(6).]

(1) A person shall not make or present or cause to be made or presented to an employee or officer of the state a claim under Act No. 280 of the Public Acts of 1939, as amended, upon or against the state, knowing the claim to be false, fictitious, or fraudulent. [MSA 400.607; MSA 16.614(7).]

The prosecutor's theory was that defendant conspired with employees of the clinic to defraud Medicaid by means of the protocol he devised, that defendant knew that various procedures and testing in the protocol were either medically unnecessary or were not performed, that Drs. Tocco and Kelly implicitly agreed to further the conspiracy by falsifying records, and that defendant caused

[1] The statutes were subsequently amended by 1984 PA 333 to delete the "fictitious or fraudulent" language.

Medicaid claims to be submitted by Drs. Tocco and Kelly with knowledge that the claims were false. The defense was that defendant instituted safeguards at the clinic to insure that services being billed were actually performed, that the work done at the clinic was medically necessary, and that defendant had no knowledge that the claims submitted by Drs. Tocco and Kelly were false.

I

On appeal, defendant claims that the instructions given to the jury on two statutory rebuttable presumptions allowed in Medicaid fraud cases require reversal. Since defendant did not object to the instructions, relief will be given only if necessary to avoid manifest injustice to the defendant. *People v Kelly*, 423 Mich 261, 272; 378 NW2d 365 (1985). In deciding whether manifest injustice occurred, we review the instructions as a whole. Our responsibility as a reviewing court is to balance the general correct, clear tenor of the instructions in their entirety against the potential misleading effect of a single sentence isolated by a defendant. *Id.*, p 275.

The instructions on the rebuttable presumptions given in this case were taken from MCL 400.608; MSA 16.614(8) and preceded by general instructions on permissive presumptions and the standard of proof imposed on the prosecutor. Specifically, the court instructed:

> A rebuttable presumption is an inference of fact based upon the existence of other basic established facts or circumstances.
>
> A rebuttable presumption has the effect of evidence and may be used as evidence. You as jurors may but need not infer the existence of the presumed fact from the basic facts.

The prosecutor still has the burden of proof beyond a reasonable doubt of all of the elements of the offense.

\*    \*    \*

[Examples.]

In these examples, the presumed facts may be used as evidence unless rebutted by competent evidence to the contrary.

\*    \*    \*

I'm now going to instruct you on the rebuttable presumption you may utilize as evidence of the defendant's knowledge in this case.

It shall be a rebuttable presumption that a person knowingly made a claim for Medicaid benefit if the person's actual, facsimile, stamped, typewritten or similar signature is used on the form required for the making of a claim for Medicaid benefit.

If a claim for Medicaid benefit is made by means of computer billing, tapes or other electronic means, it shall be a rebuttable presumption that the person knowingly made the claim if that person has notified the Department of Social Services in writing that claims for Medicaid benefits will be submitted by use of computer billing, tapes or other electronic means.

It is important to note that defendant does not challenge the above instructions or the validity of the statutory presumptions, other than the use of the word "shall," which defendant claims may have left the jury with the impression that the presumptions were mandatory. We find no merit in this argument. The use of the word "shall" merely informed the jury that the court's definition of the rebuttable presumption must be followed. Read in their entirety, the instructions clearly did not require the jury to utilize the presumptions as evidence, but merely suggested to the jury a possible conclusion to be drawn if the

prosecutor proved certain predicate facts. Hence, the presumptions were permissive. See *Kelly, supra,* pp 273-274, n 4; *Francis v Franklin,* 471 US 307, 314; 105 S Ct 1965; 85 L Ed 2d 344 (1985).

It is also important to note that defendant does not challenge the specific instructions given by the court on the intent and knowledge elements of the charged offenses. Defendant's principal attack on the jury instructions is based on the following statement made by the court immediately following the court's instructions on the knowledge element of the Medicaid fraud offense and immediately preceding the above-quoted instruction on the rebuttable presumptions. Specifically, the court stated:

> Now, because this is a prosecution for false claims under the Medicaid False Claims Act, *there are two rebuttable presumptions which you may consider on the issue of the intent of the defendants, knowledge required for establishing the knowledge, elements of the offenses charged.* [Emphasis added.]

Defendant claims that this prefatory statement misinterpreted the purpose of the presumption and may have persuaded a reasonable jury that the use of a computerized billing constituted proof beyond a reasonable doubt of defendant's intent and knowledge unless the defendant persuaded the jury otherwise. In other words, defendant claims that the instructions had the effect of shifting the burden of persuasion to defendant.

A jury instruction that shifts the burden of persuasion to the defendant on the elements of the crime is erroneous because it violates a defendant's constitutional right to due process. *Kelly, supra,* pp 273-274, n 4; and see *People v Belanger,* 158 Mich App 522, 528-529; 405 NW2d 405 (1987).

Whether or not a defendant has been accorded his constitutional rights depends upon the way that a reasonable juror could have interpreted the instruction. *Id.,* p 529.

Here, we agree with defendant's contention that the court erred in its presentment of the rebuttable presumptions to the jury. The first presumption should not have been given at all since there is no evidence that would have allowed the jury to utilize this presumption. Because the subject Medicaid claims were all made by means of computerized billing, only the second rebuttable presumption was arguably applicable to this case.

As for this second presumption, the trial court correctly instructed the jury that it applies to persons making the claim by means of computerized billing. However, the claims at issue in this case were all made by Drs. Tocco and Kelly. The jury was instructed that defendant's criminal responsibility was based on his conduct in conspiring with and causing Drs. Tocco and Kelly to make or present the claims. Hence, the trial court's prefatory language that the jury could consider the rebuttable presumption as evidence of defendant's knowledge (rather than Drs. Tocco and Kelly) was error. This error, however, did not cause manifest injustice. The presumption was only permissive and would only have permitted the jury to infer that the person making the claim did so knowingly. In essence, it allowed the jury to infer that the persons making the claims had knowledge of the claims submitted to Medicaid by means of a computer tape, despite the fact that someone else, such as the third-party billing service here, actually put the billing information onto the tape. Since the evidence was overwhelming that Drs. Tocco and Kelly actually made the claims, it is not reasonably possible that the jury would have uti-

lized the presumption to infer that defendant made them. Further, the central issue at trial was whether defendant had knowledge that the claims made by Drs. Tocco and Kelly were false. Here also, the evidence against defendant was overwhelming.

Read in their entirety, we conclude that a reasonable juror would not have interpreted the instructions as shifting the burden of persuasion to defendant. Since we find no injustice, we do not reverse on this issue. We do, however, take this opportunity to caution the bench and bar to carefully examine statutory presumptions before using them in order to insure their appropriateness to the case at hand.

II

Defendant also claims that the trial court erred by allowing the prosecutor to admit evidence obtained as a result of a grand jury subpoena. This issue was previously raised and addressed by this Court in an interlocutory appeal. See *People v Freedland,* unpublished opinion per curiam of the Court of Appeals decided April 29, 1986 (Docket No. 79865), lv den 426 Mich 858 (1986). There have been no material changes in the facts since the prior appeal. Accordingly, we hold that the law of the case doctrine precludes us from reviewing this issue. *CAF Investment Co v Saginaw Twp,* 410 Mich 428, 454; 302 NW2d 164 (1981); *Muilenberg v The Upjohn Co,* 169 Mich App 636, 641; 426 NW2d 767 (1988), lv den 432 Mich 889 (1989). Defendant's only recourse on this issue, if any, is to seek leave to appeal to the Supreme Court. See *Tebo v Havlik,* 418 Mich 350, 379-381, ns 17 and 18; 343 NW2d 181 (1984) (LEVIN, J., dissenting).

Affirmed.

DOCTOROFF, J., concurred.

R. R. LAMB, J. *(concurring)*. I concur with the result reached by the majority, but write separately to express disagreement with the majority's holding that the trial court's instruction on the second presumption was error because it was unwarranted by the evidence.

The prosecution advanced the theory that defendant was guilty of Medicaid fraud as an aider and abettor. In order to prove defendant's guilt on this theory it would be necessary to show that the crime was committed, i.e., that Drs. Tocco and Kelly knowingly submitted false claims to Medicaid. Since the billing was done using computerized tapes based on Drs. Tocco and Kelly's submitted data, the second presumption was appropriate for the jury to use for determining that the crime, which defendant allegedly had aided and abetted, was actually committed. I would find no error in the trial court's instruction on the second presumption.