*In re* NAPIERAJ

Docket No. 314305. Submitted April 9, 2014, at Detroit. Decided April 15,
    2014, at 9:05 a.m.

The Oakland County Prosecutor's Office filed a petition in the
    Oakland Circuit Court, Family Division, alleging that respondent,
    Arek Napieraj, a minor, was guilty of truancy as a result of his
    unexcused absences from school. A referee determined that re-
    spondent was guilty of truancy. The trial court, Elizabeth Pezzetti,
    J., agreed and adopted the referee's conclusion. Respondent ap-
    pealed.

The Court of Appeals *held*:

The trial court should have granted respondent's motion for a
    directed verdict at the close of petitioner's proofs on the basis that
    there was insufficient evidence to support the resulting adjudica-
    tion of guilt under MCL 712A.2(a)(4). The statute provides that a
    trial court may exercise jurisdiction over a juvenile when the
    juvenile "willfully and repeatedly absents himself or herself from
    school." The statute does not define "willfully," but a legal dictio-
    nary defines "willful" as voluntary and intentional, but not
    necessarily malicious. Michigan caselaw provides that willful in-
    volves design and purpose and means intentional. The caselaw also
    provides that a thing may be done willfully without bad faith and
    that when a statute prohibits the willful doing of an act, the act
    must be done with the specific intent to bring about the particular
    result that the statute seeks to prohibit. The referee failed to
    discuss the willfulness of respondent's conduct and assumed
    jurisdiction on the basis of her experience as a former teacher, not
    on the basis of the facts and the law presented. The record
    indicates that respondent's conduct was not willful as contem-
    plated under MCL 712A.2(a)(4). Under the facts of this case,
    respondent's mother exercised reasonable parental discretion in
    requesting that the absences be excused. The order of the trial
    court is reversed and the case is remanded for the entry of an order
    of dismissal by the trial court.

Reversed and remanded.

*Jessica R. Cooper*, Prosecuting Attorney, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for petitioner.

*Tomala Legal Group, PLLC* (by *Wayne T. Tomala*), for respondent.

Before: BORRELLO, P.J., and WHITBECK and K. F. KELLY, JJ.

PER CURIAM. Respondent, Arek Napieraj, appeals as of right an order of disposition following his adjudication of guilt on one count of school truancy, MCL 712A.2(a)(4). Finding insufficient evidence that respondent's absences were "willful," we reverse.

## I. BASIC FACTS

Respondent had a history of frequent absences from school and in September 2011, school officials met with respondent's mother and respondent to discuss the fact that respondent had already missed four days of school and the school year was just underway. Respondent's mother explained "I told them that it was an ongoing problem . . . from bullying, he felt he was being bullied in school and he would actually be physically ill in the morning for several hours. He would get up to start his day at like 6:00 a.m. and he would get sick." School officials responded that "[i]t wasn't an excuse and that he needed to come to school and tell them if he was being bullied and they would take care of it."

Respondent and his mother were called for another meeting in February 2012 to discuss respondent's continued absences. They discussed the parameters of legitimate, excused absences. Respondent's mother was advised that respondent needed to improve his atten-

dance and that there was "zero tolerance" for unexcused absences. School officials told respondent's mother that a doctor's note was required for all absences. Respondent missed three days of school following the February meeting, prompting school officials to request the prosecutor's office to send its standard warning letter, and ultimately, file a formal petition.

At the hearing on the petition, school officials testified that respondent's absences persisted and were deemed unexcused because they were not explained by a doctor's note. Respondent's mother testified that respondent's attendance had improved and that he only missed two days in March 2012 because he was competing at a dog show in Kentucky—an activity recommended by respondent's therapist. Respondent missed two or three days after that because of "a stomach bug" and when he had a migraine headache, a symptom of his Asperger's syndrome. Respondent's mother testified that she was hesitant to take him to the doctor's office because it cost between $50 and $200 per visit. She believed that only "cluster absences"—those greater than two days—needed a doctor's note.

The trial court adopted the referee's conclusion that respondent was guilty of truancy.[1] Respondent now appeals as of right.

## II. ANALYSIS

On appeal, respondent argues that the trial court should have granted his motion for a directed verdict at the close of petitioner's proofs and that there was

[1] When the dispositional hearing was held, the referee, noting respondent's improved grades, placed respondent on probation. Respondent ultimately moved to Texas and the trial court terminated jurisdiction in April 2013.

insufficient evidence to support the resulting adjudication of guilt under MCL 712A.2(a)(4). We agree.

"In reviewing the denial of a motion for a directed verdict of acquittal, this Court reviews the evidence in a light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citation and quotation marks omitted). Similarly, a defendant's challenge to the sufficiency of the evidence is reviewed de novo, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Finally, issues of statutory interpretation are likewise reviewed de novo on appeal. *People v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006).

The truancy statute, MCL 712A.2(a)(4), provides that a trial court may exercise jurisdiction over a juvenile when the juvenile "willfully and repeatedly absents himself or herself from school . . . ." Respondent argues that his absences were not "willful" because they should have been deemed excused.

"Willful" is not defined in the statute. "The fundamental rule of statutory construction is to discern and give effect to the intent of the Legislature. If statutory language is clear and unambiguous, the Legislature must have intended the meaning it expressed, and the statute must be enforced as written." *People v Venticinque*, 459 Mich 90, 99-100; 586 NW2d 732 (1998) (citation omitted). "Undefined words are to be given meaning as understood in common language, considering the text and the subject matter in which they are

used." *People v Lanzo Constr Co*, 272 Mich App 470, 474; 726 NW2d 746 (2006). However,

> The Legislature has instructed that any "technical words and phrases" that "have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." [MCL 8.3a; see also Const 1963, art 3, § 7 ("The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.").] And in the criminal-law context, common-law doctrine informs the meaning of a statute when the Legislature uses common-law terms. [*People v Smith-Anthony*, 494 Mich 669, 676-677; 837 NW2d 415 (2013).]

*Black's Law Dictionary* (9th ed) defines "willful" as "[v]oluntary and intentional, but not necessarily malicious." "[W]ilful involves design and purpose" and "means intentional." *Jennings v Southwood*, 446 Mich 125; 139–140; 521 NW2d 230 (1994) (citation and quotation marks omitted). However, "[a] thing may be done wilfully without bad faith." *Peters v Gunnell, Inc*, 253 Mich App 211, 220 n 8; 655 NW2d 582 (2002). Importantly, "when a statute prohibits the willful doing of an act, the act must be done with the specific intent to bring about the particular result the statute seeks to prohibit." *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013) (quotation marks and citation omitted).

At the conclusion of respondent's case and in the face of the evidence presented by each side, the referee announced her verdict:

> *The Court*: Okay, I taught for ten years, you're found guilty.
>
> *Mr. Tomala* [respondent's counsel]: I'm sorry?
>
> *The Court*: He's guilty.

*Mr. Tomala*: No, what—

*The Court*: He was—he's found guilty, he had more than one unexcused absence. There was a petition filed, I don't have any re—just because his attendance improved is—get me a case that says if his attendance improved I don't take jurisdiction. There is none cause that's not the law. They may have wanted his attendance to improve but I wanted him to be in school all the time. He didn't do it, he is guilty of school truancy.

*Mr. Tomala*: Just so I'm clear then, your—your statement is that any absence, we're talking strict liability, any absence results—

*The Court*: Any absence—

*Mr. Tomala*: —in a truancy?

*The Court*: —without a doctor's excuse is school truancy.

This was clear error. Clear legal error occurs "when a court incorrectly chooses, interprets, or applies the law." *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011). Here, the referee distorted truancy from an act requiring repeated, willful conduct to one of strict liability. "A strict-liability crime is one for which the prosecutor need only prove that the defendant performed the act, regardless of intent or knowledge." *People v Adams*, 262 Mich App 89, 91; 683 NW2d 729 (2004). However, "Michigan courts must infer a criminal intent for every offense in the absence of an express or implied Legislative intent to dispense with criminal intent." *Janes*, 302 Mich App at 53. MCL 712A.2(a)(4) specifies that a juvenile must have *willfully* absented himself or herself from school. The referee's cryptic statement fails to discuss the willfulness of respondent's conduct. In addition, the referee's assumption of jurisdiction appears predicated merely on her experience as a former teacher, rather than on the facts and the law presented in this case. Respondent was entitled to individual consideration based upon the law and facts

applicable to his case, not on anecdotal experiences of the hearing officer. See *Brausch v Brausch*, 283 Mich App 339, 354; 770 NW2d 77 (2009).

Our review of the record compels a finding that respondent's conduct in this case was not willful as contemplated under MCL 712A.2(a)(4). Petitioner's own witnesses admitted that certain of respondent's absences were attributable to illness and fear of bullying. Moreover, petitioner's own attendance record categorized many of respondent's absences as "excused," although the school official testified, in essence, that "excused" did not mean "excused" for purposes of the allegations made in the petition against respondent. The official testified that the designation "E-P" on the attendance record indicated "excused, parent called [in]," and the notation "E-IL" designated "excused for illness," a circumstance where a parent called to report that the student was home sick. The official was unsure what the "E-PC" designation indicated—he speculated that it was a parent call-in—and that "R" indicated an absence due to a school-related function, which absence would not be considered as truant. When asked about the use of the word "excused" on the attendance record in light of the school's position that, instead, the referenced absences were in fact "unexcused," the official said, "[y]ou know, I—excused is an interesting term. It just means a parent called." Thus, it appears that respondent's attendance record says one thing but means another and that certain "excused" absences were in reality "unexcused."

Respondent's mother provided the reasons for respondent's absences. Respondent was being bullied in school and he would periodically become physically ill and vomit in the morning for several hours; again, petitioner conceded it had received reports of bullying. Respondent's mother also provided a doctor's note to

the school excusing certain of the disputed absences, and excused two days in March 2012 because respondent was competing at a dog show in Kentucky—an activity recommended by respondent's therapist. Respondent missed two or three days after that because of "a stomach bug" and when he had a migraine headache, a symptom of his Asperger's syndrome. Finally, respondent's mother explained that she was hesitant to take her son to the doctor's office because it cost between $50 and $200 per visit. This evidence was not disputed, except by testimony stating the school's position that the absences noted as excused on the attendance sheet were, in fact, apparently secretly unexcused, and that any absence required a doctor's note. We conclude that, under these facts, respondent's mother exercised reasonable parental discretion and that the absences should have been deemed excused at her request.

On this record, and contrary to the notion that respondent's absences were "voluntary or intentional," the evidence militates against a conclusion that respondent's absences were "willful" within the meaning of MCL 712A.2(a)(4). The referee failed to address the evidence presented on the record or make any reference to the "willful" element of the statute under which respondent was charged. Indeed, the referee made no findings of fact or conclusions of law of any kind and does not appear to have applied the law to the facts of the case in any way. It appears rather that the referee substituted her personal experience and bias and failed to apply the law to the facts; such a position is untenable.

Reversed and remanded for entry of an order of dismissal.

BORRELLO, P.J., and WHITBECK and K. F. KELLY, JJ., concurred.