# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CHARLES DAMON JONES,

       Defendant-Appellant.

UNPUBLISHED
January 12, 2017

No. 324384
Wayne Circuit Court
LC No. 12-000948-FC

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, and perjury in a court proceeding, MCL 750.422. The jury acquitted defendant of an original charge of first-degree premeditated murder, MCL 750.316(1)(a), and additional charges of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 40 to 60 years for the second-degree murder conviction and 10 to 20 years for the perjury conviction. Defendant appeals as of right. We affirm in part, vacate in part and remand.

## I. BACKGROUND

Defendant was convicted of second-degree murder for aiding or abetting Chauncey Louis Owens in the fatal shooting of 17-year-old Jer'ean Blake (the "victim"), who was shot once in the chest outside a party store in Detroit. Testimony indicated that the victim was outside the party store with a group of friends after school on May 14, 2010. Owens arrived on a moped, had a brief encounter with the victim, and told the victim to remain there and he would be back with something for him. Shortly thereafter, Owens returned in a sports utility vehicle (SUV) with three or four other individuals. Owens shot the victim in the chest and then returned with his companions to his residence, where he encountered his brother, Shrron Hurt. The prosecution's theory at trial was that defendant aided or abetted Owens by supplying him with the gun used to shoot the victim.

Defendant was charged with first-degree premeditated murder, felon in possession of a firearm, and felony-firearm. He was charged with perjury based on his testimony before a one-person grand jury regarding his presence at or knowledge of the shooting during an investigation

-1-

of another shooting in which his daughter was killed. Defendant was tried jointly with codefendant Owens, but before separate juries.

At trial, the prosecution introduced the testimony of two persons, Jalen Dates and Amber Holloway, who were present at the scene of the shooting, both of whom identified defendant as one of the occupants of the SUV that Owens arrived in before he shot the victim. Neither of those persons had a relationship with defendant. Another witness who was acquainted with defendant, Hurt, also testified that defendant was with Owens when Owens returned to his residence in the SUV shortly after the shooting. The prosecution also introduced statements made by Owens to a fellow jail inmate, Jay Schlenkerman, in the latter part of 2011, and statements made by defendant to another jail inmate, Qasim Raqib, while they were both awaiting court proceedings in December 2011. Those statements were offered to support the prosecution's theory that defendant supplied Owens with the gun used to shoot the victim.

## II. MRE 804(B)(3) EVIDENCE

We first address defendant's argument that Owens's statements to Schlenkerman were inadmissible under the hearsay exception for statements against penal interest in MRE 804(b)(3). Initially, the trial court denied the prosecutor's pre-trial motion to admit Owens's statements to Schlenkerman under MRE 804(b)(3). Plaintiff filed an application for leave to appeal that decision and this Court, in lieu of granting leave to appeal, peremptorily reversed the trial court's order and ruled that Owens's statements "are admissible under MRE 804(b)(3)." *People v Jones*, unpublished order of the Court of Appeals, entered August 13, 2012 (Docket No. 310518), lv den 494 Mich 863 (2013). Defendant acknowledges that the law of the case doctrine precludes us from reconsidering this Court's reasons for reversing the trial court's order in the prior appeal. Defendant argues, however, that he could have presented other reasons for excluding Owens's statements under MRE 804(b)(3), which the trial court had rejected in its pretrial ruling, but which this Court did not reach because it peremptorily reversed the trial court's pretrial ruling without granting leave to appeal. Defendant contends that the law of the case doctrine should not preclude him from challenging the admissibility of Owens's statements to Schlenkerman on those grounds. We disagree.

The trial court's pretrial order clearly denied the admission of Schlenkerman's proffered testimony under MRE 804(b)(3), and this Court clearly stated in its order reversing the trial court's decision that "Owens' statements against his penal interest, which inculpate defendant as well as himself, bear sufficient indicia of reliability, and are admissible under MRE 804(b)(3)." This Court's order indicates that it considered the content and circumstances surrounding Owens's statements, including their inculpatory nature and the relationship between Owens and Schlenkerman. *Id*. It is implicit from this Court's order that the statements admissible at trial included Owens's statements about using a gun that had been given to him by defendant.

Because this Court reversed the trial court's pretrial order and defendant failed to advance any claim before or at trial that the law of the case doctrine did not preclude consideration of other reasons for excluding Schlenkerman's testimony regarding Owens's statements, defendant failed to preserve this argument for appeal. *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999). Therefore, defendant has the burden of establishing a plain

error affecting his substantial rights. *People v Vaughn*, 491 Mich 642, 665; 821 NW2d 288 (2012); see also *Carines*, 460 Mich at 763.

Whether the law of the case doctrine applies in a particular case is a question of law that we review de novo. *KBD & Assoc, Inc v Great Lakes Form Technologies, Inc*, 295 Mich App 666, 679; 816 NW2d 464 (2012). Under the law of the case doctrine, where an appellate court rules on a legal question and remands for further proceedings, the legal question will not be determined differently in a subsequent appeal where the facts remain materially the same. *Grievance Admin v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000). The appellate court's ruling also binds lower tribunals because a lower tribunal may not take action on remand that is inconsistent with the appellate court's judgment. *Id*. at 260.

The law of the case doctrine applies to issues that are actually decided, implicitly or expressly, in the prior appeal. *Id*. This Court has applied the doctrine in a criminal case to preclude reconsideration of an evidentiary issue decided in an interlocutory appeal where there has been no change in the material facts since the prior appeal. *People v Freedland*, 178 Mich App 761, 770; 444 NW2d 250 (1989). The doctrine is generally applied regardless of the correctness of the prior decision. *People v Herrera* (*On Remand*), 204 Mich App 333, 340; 514 NW2d 543 (1994). However, the doctrine is not so inflexible that it must be applied where it would create an injustice. *People v Phillips* (*Second Remand*), 227 Mich App 28, 33; 575 NW2d 784 (1997); *Herrera*, 204 Mich App at 340-341.

Because this Court clearly ruled in the prior appeal that Owens's statements were admissible under MRE 804(b)(3), we reject defendant's argument on appeal that the law of the case doctrine is inapplicable to his challenge to that testimony based on the pretrial record. We note that defendant does not argue or demonstrate that the testimony actually introduced at trial differed materially from the offer of proof that served as the basis for the trial court's pretrial ruling and this Court's prior decision. Therefore, neither the trial court (nor this Court on appeal) should be allowed to reconsider the admissibility of the evidence. Cf. *United States v Layton*, 855 F2d 1388, 1403 (CA 9, 1988) overruled on other grounds, *United States v George*, 960 F2d 97 (CA 9, 1992) (the law of the case doctrine was not applied to evidence admitted under FRE 804(b)(3) where it was substantially different from the offer of proof relied upon in an interlocutory appeal).

To the extent that defendant asserts that the trial evidence showed that Schlenkerman interrogated Owens while they were fellow jail inmates, the record does not support this claim. An interrogation is generally understood to be questioning that is typically accompanied by formality. *United States v Smalls*, 605 F3d 765, 779 (CA 10, 2010). It does not encompass casual questioning by a fellow inmate. *Id*. In this case, Schlenkerman testified that he had conversations with Owens and would engage in mutual exchanges of questions with him on various topics, including their cases. The prosecutor questioned Schlenkerman on direct examination about a specific conversation that occurred on one occasion while Owens was in the day room and Schlenkerman was in his cell at the top of the stairs to establish Owens's statements regarding his acquisition of a gun from defendant to shoot the victim. Nothing in this testimony suggests that Owens's provided inculpatory statements in response to "interrogation."

We reject defendant's argument that this Court's decision to peremptorily reverse the trial court's pretrial order, rather than grant the application for leave to appeal, precluded him from raising alternative grounds for affirming the pretrial order. Defendant had the opportunity to present his arguments in his answer to the prosecution's application for leave to appeal. In addition, if defendant believed that his specific arguments were not considered, and could have made a difference in this Court's prior decision, he could have moved for reconsideration. MCR 7.215(I). Thus, neither an injustice nor an error affecting substantial rights has been proven.

### III. SUFFICIENCY OF THE EVIDENCE

We next address defendant's argument that he is entitled to a directed verdict of acquittal with respect to the second-degree murder conviction because there was insufficient credible evidence that he aided or abetted Owens in committing the murder. We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *In re Napieraj*, 304 Mich App 742, 745; 848 NW2d 499 (2014). This same standard applies to our review of a trial court's decision on a motion for a directed verdict. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006); *In re Napieraj*, 304 Mich App at 745. Due process commands a judgment of acquittal where the trial evidence is insufficient to sustain a conviction. *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998).

The elements of second-degree murder are "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). To convict a defendant under an aiding or abetting theory, the prosecution must prove that (1) the defendant or some other person committed the crime, (2) the defendant performed acts or gave encouragement to assist the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended its commission when giving aid or encouragement. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). Alternatively, the third element may be established by proof that the charged offense was the natural and probable consequences of the offense that the defendant specifically intended to aid or abet. *Id*. at 15.

In this case, defendant's arguments concern only the sufficiency of the evidence to establish his presence at the shooting, and whether he assisted Owens in committing the offense by providing him with the gun used to shoot the victim. Although defendant challenges the credibility of Schlenkerman's and Raqib's testimony, their testimony is not essential to establish defendant's presence at the shooting. Defendant's presence was established by identifications by Dates and Holloway, and the testimony of Owens's brother, Hurt, who stated that he saw defendant in the SUV shortly after the shooting occurred. And while defendant challenges the credibility of Schlenkerman's testimony, that Owens told him that he acquired the gun from defendant, and the credibility of Raqib's testimony that defendant told him that he gave a gun to his codefendant, we will not interfere with the jury's role in determining the credibility of witnesses when reviewing a challenge to the sufficiency of the evidence. *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015), lv held in abeyance ___ Mich ___ (12/23/2015); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt

that defendant was guilty of second-degree murder under an aiding or abetting theory. *Gillis*, 474 Mich at 113; *In re Napieraj*, 304 Mich App at 745.

## IV. GREAT WEIGHT OF THE EVIDENCE

Defendant alternatively argues that the trial court erred in denying his motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence. We disagree.

We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012); *Lemmon*, 456 Mich at 648 n 27. "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *Rao*, 491 Mich at 279. The appropriate test for determining whether a new trial should be granted on the ground that a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the jury's verdict that it would be a miscarriage of justice to allow it to stand. *Bosca*, 310 Mich App at 12; *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902 (2015).

When the trial court considers a motion for new trial under the great-weight standard, it may not act as a thirteenth juror when evaluating the evidence. *Bosca*, 310 Mich App at 13. Conflicting testimony or credibility issues are generally insufficient to support a new trial. *Lemmon*, 456 Mich at 643; *Bosca*, 310 Mich App at 13. Exceptional circumstances sufficient to take the issue of credibility away from the jury and support the grant of a new trial include circumstances where testimony is (1) contradicted by indisputable physical facts or law, (2) patently incredible or contrary to physical realities, (3) so inherently implausible that a reasonable juror could not believe it, or (4) seriously impeached in a case marked by uncertainties and discrepancies. *Lemmon*, 456 Mich at 643-644; *Bosca*, 310 Mich App at 13.

Defendant has failed to establish that the record supports his position that the jury's verdict is against the great weight of the evidence. Defendant has not established exceptional circumstances for divesting the jury of its role in determining the weight or credibility of evidence that he aided or abetted Owens in committing the murder. Neither the testimony of Schlenkerman nor Raqib was patently incredible, inherently implausible, or so seriously impeached that it could not be believed. *Lemmon*, 456 Mich at 643-644. Indeed, Schlenkerman's testimony regarding his daily contact with Owens in jail was corroborated by Corporal Donahee's testimony. Schlenkerman's testimony that he was not testifying pursuant to a plea agreement was unrebutted. And while Raqib testified as part of a plea agreement that required him to testify in three cases, including his own murder case, Detroit Police Sergeant Samuel Mackie testified that Raqib had been in a lockup with defendant and that Raqib had details regarding what happened in court, which were not available to him through the media. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

## V. INCONSISTENT VERDICTS

Defendant also argues that the trial court erred in failing to direct a verdict of acquittal with respect to the second-degree murder conviction because the jury acquitted him of felon in possession of a firearm and felony-firearm. He argues both that this is an inconsistent verdict and that it is a verdict that resulted from unresolved juror confusion. Because a court is required to view the evidence in a light most favorable to the prosecution when considering a motion for a directed verdict of acquittal, and the evidence so viewed support's defendant's conviction of second-degree murder, we reject defendant's argument. *Gillis*, 474 Mich at 113; *In re Napieraj*, 304 Mich App at 745.

We agree with defendant's alternative argument that he is entitled to a new trial because the jury's verdicts acquitting him of the firearm charges, but finding him guilty of second-degree murder and notes submitted by the jury during deliberations indicate that its verdicts were the result of impermissible compromise or confusion.

The rendering of a facially inconsistent verdict does not require reversal of a conviction. *People v Vaughn*, supra, and *People v Lewis*, 415 Mich 443; 330 NW2d 16 (1982), are the seminal cases in Michigan regarding inconsistent verdicts. In Vaughn, the Court held that being found guilty of felonious assault and not guilty of felony-firearm, did not require reversal of the conviction of felonious assault. 409 Mich a 464. The Court cited *Dunn v US*, 284 US 390, 393; 52 S Ct 189; 76 L Ed 356 (1932), which held that, "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Id*. at 465. The Vaughn Court also cited *People v Chamblis*, 395 Mich 408, 420; 236 NW2d 473 (1975), that "[b]ecause the jury is the sole judge of the all the facts, it can choose without any apparent logical basis, what to believe and what to disbelieve. What may appeal to the judge as 'undisputed' need not be believed by a jury." *Id*. at 466. In Vaughn, the Court concluded that, "[s]ince we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release." *Id*.

While facial inconsistency alone does not support reversal of a conviction, such a conviction may be set aside if there is other evidence that the verdict was improper. Expounding on the reasoning in Vaughn, the Lewis Court addressed under what circumstances a facially inconsistent verdict may be evidence of reversible error. In Lewis, defendant Lewis was convicted of second-degree murder and felony firearm. Similar to Vaughn, defendant Lewis sought to have his felony-firearm conviction set aside because the jury acquitted him of second-degree murder. Rejecting the argument that inconsistency alone warranted reversal, the Court noted that in circumstances where there was evidence that such inconsistency was the result of compromise or confusion, such verdicts should be set aside. Discussing the error of compromise, the Court wrote, "there is the risk that some of the jurors who agreed to the compromise did not believe beyond a reasonable doubt that the defendant committed a felony, but nonetheless agreed to convict the defendant of felony-firearm (although commission of a felony is an element) in exchange for the agreement of other jurors to acquit the defendant of the underlying felony." *Id*. at 451. The Lewis Court also discussed the need to vacate inconsistent verdicts in the instance of juror confusion in a footnote:

> Another view of the jury's verdict is that the jury was confused, did not understand the instructions, and did not know what it was doing. If that is what

> occurred, then the confusion taints the verdict finding the defendant not guilty of the underlying felony as well as the verdict finding him guilty of felony-firearm. Jury confusion is not a reason to set aside the verdict of conviction and to uphold the verdict of acquittal, but rather would argue for setting aside both verdicts, with a new trial on both charges. [*Id*. at 450 n 9.].

*People v McKinley*, 168 Mich App 496, 510; 425 NW2d 460 (1988), followed this line of reasoning holding that, "[i]nconsistent verdicts might be cause for reversal when it is evident that the jury was confused, did not understand the instructions, or did not know what it was doing."

There is ample evidence that the facially inconsistent verdicts in this case were the product of juror confusion and possible juror compromise. Below, we outline the trial record with respect to the jury deliberations.

| Date | Jury Note | Court Response |
|---|---|---|
| February 10, 2014<br>2:10 p.m. | 1. "Is there a written transcript of the phone recording available?"<br>2. "and laptop if not available"<br>3. "Can we have [sic] transcript of Sherron [sic] Hurt (Chinaman) Jay Schlenkerman and Rasim [sic] Raqib testimony?" | 1. No response.<br>2. "Yes."<br>3. "Written transcript will take a week."<br>Try to rely on your collective memories. |
| February 10, 2014<br>2:21 p.m. | "Can we have loudspeakers (or earphones) for listening to phone conversation [sic]?" | No response. |
| Unknown | "Do we need to reach a verdict on all counts? Can we be unanimous on one count and be hung on three?" | February 11, 2014, 12:22 p.m., deadlocked-jury instruction given. |
| February 11, 2014<br>1:58 p.m. | "Will we be able to review the testimonies that were previously mentioned? Hurt, Schlenkerman & Raqib [sic] We will return @ 8:45 a.m. tomorrow?" | February 12, 2014, Raqib's and Schlenkerman's testimony played back. |
| February 11, 2014<br>3:13 p.m. | "Can you provide a clearer definition (expand definition) of 'aiding and abetting'? We'd like to hear [sic] Raqib tape." | No response. |
| February 12, 2014<br>9:30 a.m. | "We'd like to hear Schlenkerman testimony to start." | Schlenkerman's testimony was played backed. |
| February 12, 2014<br>2:11 p.m. | "Judge Skutt: We have not made significant progress in reaching a verdict on counts 1, 3 & 4. We believe that we will not be able to reach a verdict on these counts. We have reached a | "We are finishing closing arguments bear with me until about 2:20 and we'll have you come out-"<br>Deadlocked-jury instruction given. |

| | verdict on count 2." | |
|---|---|---|
| February 13, 2014<br><br>9:07 a.m. | "Judge Skutt . . . I feel like this Jury will not make a decission [sic]. It will not happen in 1 day, 1 week, 1 month or ever. I know the court spent a lot of time, and the family needs closure and I am very upset about everything. I hope some day the real truth will come out, (But it will not happen with this jury). I am also supposed to work starting Sat. FEB 15th . . . If you think we are going past Friday the 14th can you replace me with an alternate.[sic] I feel like deliberating any further is futile. I honestly did the best I could, I can't do it anymore!!!" | No response. |
| February 13, 2014<br><br>10:42 a.m. | "Does being in a vehicle or a residence with or knowing the location of a firearm constitute possession of a firearm?" | "Read 12.7 & sent in copy." |
| February 13, 2014<br><br>11:38 a.m. | "We have unanimous verdicts on all four counts." | Jury is called out to give verdicts on the record. |
| Unknown | "If we are [sic]<br><br>How can we determine Jones aided if we don't hear all the evidence of the crime? If we can't be sure he aided in a killing" | No response. |
| Unknown | "I don't understand what the 'stipulation' means. Can someone explain? (I hope?)" | No response. |

The jury's notes to the court document multiple requests to examine the testimony and for instructions on the law that were either ignored or responded to in a dilatory fashion. The questions from the jury do not illustrate that the jury exercised compassion or leniency in not convicting defendant of felony-firearm and felon in possession as the prosecution argues. The jury's questions in this case demonstrate confusion and/or compromise. We are most concerned with the fact that both the jury foreperson on behalf of the jury and an additional juror on his or her own behalf, asked for an explanation as to the law of aiding or abetting and received no response from the court. This Court has previously cautioned that, "[t]he refusal to assist a jury struggling to understand the law relegates jurors to conjecture and legal invention. Under such circumstances, a guilty verdict is inherently tainted." *People v Hoch*, unpublished opinion per curiam of the Court of Appeals, issued October 30, 2008 (Docket No. 269739). Our Supreme Court has also held that, "[w]here confusion is expressed by a juror, it is incumbent upon the court to guide the jury by providing a lucid statement of the relevant legal criteria." *People v Martin*, 392 Mich 553, 558; 221 NW2d 336 (1974), overruled in part on other grounds in *People v Woods*, 416 Mich 581; 331 NW2d 707 (1982), (internal quotation omitted). The jury's questions show that they were unsure about the law and how it applied, and yet were told to continue to deliberate for two days without guidance and without a review of the testimony from key witnesses against defendant. We acknowledge that the trial court is responsible for the efficient operation of its courtroom and the handling of cases before it. We also appreciate the severe and increasing stresses trial courts are under to manage their dockets. Nonetheless, the jury also has a right to be properly instructed on the law. We find that the trial court failed to

provide the jury with a number of reasonable requests for explanation, and it all but literally told the jurors that the only way out of the jury room was to render a verdict. In this case, the confusion, and perhaps the inconsistency, may have been resolved if the court would have taken the time to respond to juror questions, even if that meant the deliberative process was extended.

Clear record evidence of unresolved jury confusion is sufficient persuasive indicium of jury compromise. *People v Graves*, 458 Mich 476, 487-488; 581 NW2d 229 (1998). When the jury compromises, the defendant is prejudiced. *Lewis*, 415 Mich at 451. Here, the jury's questions illustrate that it was confused about whether defendant aided or abetted Owen. The court failed to respond. The failure to reinstruct on the law is evidence of unresolved confusion and leaving the jury to its own devices. The court's failure is significant given that the prosecution's theory relied on the jury believing that defendant aided the commission of a murder by supplying the shooter with a handgun. There is also evidence that some jurors, who did not believe beyond a reasonable doubt that defendant committed a felony, nonetheless agreed to convict defendant of the felony in exchange for the agreement of other jurors to acquit the defendant of felony-firearm and felon in possession. At least one juror informed the court that he or she questioned the sufficiency of the evidence as to aiding or abetting, and received no response. On two separate occasions, the jury expressed that it could not agree on counts one, three and four, and were told to continue to deliberate. After three days of deliberations, one juror urged the court to release him because he thought this jury was never going to reach a verdict. Hours after this juror's urging, the seemingly conflicted jury, without receiving the clarification it sought, pronounced a facially inconsistent verdict. Consequently, the conviction for second-degree murder must be set aside.

We observe that the constitutional prohibition against double jeopardy is so absolutely vital to our legal system that defendant's offer to waive it is simply not a compromise that can be accepted. Therefore we hold that on remand, the charges of which defendant was acquitted by the jury may not be retried.

Defendant's perjury conviction is affirmed, defendant's second-degree murder conviction is vacated, double jeopardy precludes defendant from being retried on any charges of which he was acquitted by the jury, and this matter is remanded to the trial court for a new trial on the charge of the second-degree murder. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens