# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 29, 2014

148674

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

SHAWQUANDA BOROM,
        Defendant-Appellant.

_____/

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

SC: 148674
COA: 313750
Wayne CC: 12-004559-FC

On October 22, 2014, the Court heard oral argument on the application for leave to appeal the December 19, 2013 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.302(H)(1). In this case, the defendant is charged with two counts of first-degree child abuse, as both a principal and an aider and abettor, and one count of first-degree felony murder, the predicate felony being the second count of first-degree child abuse occurring on July 26, 2011. In lieu of granting leave to appeal, if the prosecutor proceeds to trial on an aiding and abetting theory, we DIRECT the Wayne Circuit Court, pursuant to MCR 7.301(A), to require that, if the jury finds the defendant guilty of the second count of first-degree child abuse or felony murder, the jury return a special verdict form specifying whether any such verdict was premised on a theory that the defendant acted as a principal or that the defendant aided or abetted the commission of either of the offenses. See MCR 2.515(A) and MCR 6.001(D). In all other respects, the application for leave to appeal is DENIED, because we are not persuaded that the questions presented should now be reviewed by this Court.

MARKMAN, J. (*concurring*).

I concur in this Court's interlocutory denial and write separately only to respond to the dissent, which concludes that there was not probable cause that defendant possessed the necessary intent to sustain a charge of first-degree child abuse.

Defendant, her 17-year-old boyfriend, and her 16-month-old child lived in the home of defendant's mother. In July 2011, the child was injured on three separate occasions while at the home. First, the child suffered an injury to his shoulder on July 9, for which he was treated at a hospital and returned home. Second, on or about July 23, the child suffered second- and third-degree burns to the back of his head and face, for which he was not treated. Third, the child suffered a skull fracture on July 26, for which he was brought again to the hospital, where he died two days later.

Authorities investigated the injuries that led to the child's death, and defendant was eventually charged with three counts of first-degree child abuse and one count of first-degree felony murder.[1]

At her preliminary examination, several witnesses testified concerning the circumstances, and likely causes, of the child's injuries, and the district court considered various out-of-court statements of defendant and her boyfriend. The evidence generally indicated that the child suffered the first injury while in the boyfriend's care and that it was not deemed suspicious at the time. However, the facts surrounding the second and third injuries were of greater concern. Concerning the second injury, both defendant and her boyfriend asserted that the child was burned when the child accidentally turned on the hot water during a bath. The boyfriend indicated that *he* was the only person bathing the child at the time the child was burned, while defendant indicated that *she* was the only person bathing the child. The medical examiner opined that it was unlikely that the child had accidentally turned on the hot water and burned himself. Concerning the third and fatal injury, the testimony indicated that the child had been left alone in the boyfriend's care. He stated that he saw the child strike his head when he accidentally fell off the porch stairs. Defendant, on the other hand, stated variously that nothing caused the injury, that she saw the child fall off the porch stairs and injure himself, and that she was not at home when the injury occurred. Defendant, at her mother's urging, eventually called 911 that evening. According to the medical examiner, the fatal injury was most consistent with the child being thrown against a "firm object," and the death was the result of homicide.

The prosecutor moved the district court to dismiss the charge of first-degree child abuse arising out of the first injury and bind defendant over to the circuit court for trial

---

[1] In Michigan, murder is divided into two degrees: first and second. First-degree murder is defined in MCL 750.316 and includes "premeditated murder" and "felony murder." *People v Williams*, 475 Mich 101, 103 (2006). "All other murders" that are not first-degree murder "are murders in the second degree." *People v Mendoza*, 468 Mich 527, 534 (2003). "First-degree felony murder is the killing of a human being with malice while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)]." *People v Ream*, 481 Mich 223, 241 (2008) (citation, quotation marks, and emphasis omitted). One felony specifically enumerated in MCL 750.316(1)(b) is "child abuse in the first degree." "[M]alice is a term of art." *People v Aaron*, 409 Mich 672, 712 (1980). "A legal term of art is a technical word or phrase that has acquired a particular and appropriate meaning in the law." *People v Law*, 459 Mich 419, 425 n 8 (1999). "[M]alice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of [the] defendant's behavior is to cause death or great bodily harm." *Aaron*, 409 Mich at 728.

only on the remaining three charges, and the district court did so. Defendant then moved the circuit court to dismiss the charges in their entirety, and the motion was denied. The Court of Appeals affirmed.

"The purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Perkins*, 468 Mich 448, 452 (2003). "Probable cause requires a quantum of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' of the accused's guilt." *People v Yost*, 468 Mich 122, 126 (2003), quoting *People v Justice* (*After Remand*), 454 Mich 334, 344 (1997). "The prosecutor need not establish beyond a reasonable doubt that a crime was committed." *Perkins*, 468 Mich at 452. "Absent an abuse of discretion, reviewing courts should not disturb a magistrate's decision to bind a criminal defendant over for trial." *People v Plunkett*, 485 Mich 50, 57 (2010). "A mere difference in judicial opinion does not establish an abuse of discretion." *People v Cress*, 468 Mich 678, 691 (2003).

At the time relevant to this case, the first-degree child abuse statute, MCL 750.136b(2), read as follows:

> A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child. Child abuse in the first degree is a felony punishable by imprisonment for not more than 15 years. [As amended by 2008 PA 577.]

To prove first-degree child abuse, the prosecutor must show that the "defendant intended to commit the act" and that the "defendant intended to cause serious physical [or serious mental] harm or knew that serious physical [or serious mental] harm would be caused by" the act. *People v Maynor*, 470 Mich 289, 291 (2004).[2]

According to the dissent, defendant did not possess the necessary intent to sustain the first-degree child abuse charge arising out of the *third* injury. First, the dissent contends that defendant did not possess the necessary intent as a principal because she did not intend to cause serious physical or serious mental harm by leaving the child with her boyfriend, nor did she know that serious physical or serious mental harm would be caused by doing so. Second, the dissent contends that defendant did not possess the

---

[2] According to the dissent, "only acts by which a defendant specifically intended to harm the child are punishable under the first-degree child abuse statute." In the law, "specific intent . . . involve[s] a particular criminal intent beyond the act done . . . ." *People v Beaudin*, 417 Mich 570, 573-574 (1983). "Specific intent" is distinguishable from "general intent," which "involve[s] merely the intent to do the physical act." *Id*.

necessary intent as an aider and abettor because she did not have knowledge of her boyfriend's intent to commit first-degree child abuse.

Concerning the first contention, I do not believe the district court erred by finding probable cause that defendant had knowledge that serious physical or serious mental harm would be caused by leaving the child with her boyfriend. The evidence indicated that the child had suffered two serious injuries in a two-week period, each time while in the boyfriend's care. The second injury in particular cast the first injury in a suspicious light. In addition, defendant's mother had warned her that bringing the child to the hospital following the second injury could result in Children's Protective Services removing the child from the home. Given the successive injures, and given the warning about Children's Protective Services intervention, it is not unreasonable to infer that defendant knew that her boyfriend was abusing the child and causing him serious physical harm. Given defendant's knowledge of the ongoing serious physical harm caused by her boyfriend on two prior and recent occasions on which the child was left alone with him, there was sufficient probable cause to believe that she "knew that serious physical harm would be caused by" leaving the child in her boyfriend's exclusive care on a *third* occasion. *Maynor*, 470 Mich at 291.

Concerning the second contention, I again do not believe the district court erred by finding probable cause that defendant had knowledge of her boyfriend's intent to commit first-degree child abuse. The aiding-and-abetting statute, MCL 767.39, reads as follows:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Aiding and abetting "is simply a theory of prosecution, not a separate substantive offense." *People v Perry*, 460 Mich 55, 63 n 20 (1999). "[A] defendant is liable for the crime the defendant intends to aid or abet . . . ." *People v Robinson*, 475 Mich 1, 14-15 (2006). "This includes both intending to commit the crime and *aiding someone with knowledge that he or she intends to commit the crime*." *Id*. at 15 n 39 (emphasis added).

As already noted, the evidence here indicated that defendant knew that her boyfriend was physically abusing the child and causing him serious physical harm. If so, there was obviously probable cause to believe that defendant knew that her boyfriend harbored an intent to cause the child such harm. By placing the child in his care on the day in question, defendant "aid[ed] someone with knowledge that he or she intend[ed] to commit the crime" of first-degree child abuse. *Id*.

In conclusion, and contrary to the dissent, I do not believe the district court abused its discretion by binding defendant over on the charge of first-degree child abuse arising out of the fatal injury either as a principal or on an aiding-and-abetting theory. Furthermore, because I disagree that the district court abused its discretion by binding defendant over on the predicate felony, I similarly disagree that it abused its discretion by binding defendant over on the charge of first-degree felony murder. Therefore, I concur in this Court's order denying interlocutory leave to appeal.[3]

CAVANAGH, J. (*dissenting*).

I disagree with the majority's interlocutory denial of leave to appeal in this case. Instead, I would hold that the facts alleged are insufficient to bind defendant over on charges of first-degree child abuse and felony murder under an aiding-and-abetting theory. Therefore, I respectfully dissent.

BACKGROUND

Defendant and her 16-month-old son were living in the home of defendant's mother. Defendant's 17-year-old boyfriend also lived with them. In July 2011, defendant's son suffered three injuries over the course of several weeks while under her boyfriend's supervision.

The first injury resulted in a broken arm and shoulder. Defendant's boyfriend claimed that the injury occurred when the child fell off the side of the stairs. Defendant and her boyfriend did not initially take the child to the hospital; however, defendant's mother later discovered the injury and took defendant, defendant's boyfriend, and the

_____

[3] I concur in the Court's order for another reason. The prosecutor may present alternative theories to the jury that defendant was guilty of the charges either as a principal or as an aider and abettor. See *People v Gadomski*, 232 Mich App 24, 31 (1998). Ordinarily, "the jury in a criminal prosecution . . . return[s] a general verdict—guilty or not guilty." *People v Ramsey*, 422 Mich 500, 525 (1985) (LEVIN, J., dissenting). Thus, when the prosecutor presents alternative theories of guilt and the jury returns a general verdict of guilty, the jury does not specify under which theory it found the defendant guilty. See, e.g., *People v Booker* (*After Remand*), 208 Mich App 163, 170 (1994). However, MCR 2.515(A) provides that "[t]he court may require the jury to return a special verdict in the form of a written finding on [an] issue of fact, rather than a general verdict." Under this Court's order, therefore, if the prosecutor presents alternative theories of guilt and the jury finds defendant guilty of one or more of the charges, the lower courts will be able to identify whether the verdicts were based on defendant's being a principal or an aiding-and-abetting theory. Put simply, this Court's order provides guidance for the lower courts in any proceedings that might arise after trial. For this additional reason, I concur.

child to the hospital where the child was treated for the injury.

The second injury occurred two weeks later. The child suffered third-degree burns on the back of his head and second-degree burns across his face. Defendant's boyfriend claimed that the burn injuries were caused when he put the child in the bathtub and started the water before leaving the room to get a diaper; he returned to discover that the child had turned on the hot water, burning his face and head. Defendant's mother talked to defendant about taking the child to the doctor, but warned defendant that the child would be taken by Child Protective Services for having sustained a second serious injury. Defendant treated the burns with salve and bandages at the advice of her mother, who was a healthcare worker, instead of taking the child to the doctor. The medical examiner later determined that the burn pattern was consistent with a situation in which the child's face was toward the floor and hot water was poured on the back of his head and flowed down both sides of his head.

The third injury occurred a week later where the child suffered a blow to the head and became unresponsive. Defendant's mother received a panicked telephone call from defendant, saying that she could not wake the child. After speaking with defendant's boyfriend, during two separate phone calls defendant's mother told him and defendant each to call 911. Defendant called 911, and an ambulance arrived and took the child to the hospital, where he died days later. Defendant's boyfriend explained that the third injury had occurred when he and the child were playing with a ball, while defendant's boyfriend was in the yard and the child was on the porch. When defendant's boyfriend went to retrieve the ball after the child threw it past him, the child fell off the porch. During a police interview, defendant's boyfriend wrote a statement explaining that defendant was not present when any of the injuries occurred. Defendant's boyfriend and defendant told police that defendant had initially lied about being present during the injuries because she was afraid that she would lose custody of the child because her boyfriend was not old enough to be watching the child alone.

The medical examiner opined that the child's death was caused by a massive subdural hematoma that occurred as the result of a blunt-force blow to the head powerful enough to fracture the skull. The examiner concluded that the injury did not result from a four- or five-foot fall, as described by defendant and defendant's boyfriend. After reviewing a reenactment by defendant's boyfriend of how the injuries allegedly occurred, the medical examiner concluded that the injuries did not occur as described. The medical examiner opined that it was more likely that the child had been thrown with force against a hard object. The medical examiner determined that the death was a homicide.

Defendant was charged with two counts of first-degree child abuse, premised on the first and third incidents, and one count of felony murder based on the first-degree child abuse charge stemming from the third incident. The district court bound defendant over for trial, but dismissed the count of first-degree child abuse stemming from the first

incident. Defendant moved to quash all charges, alleging in part that her failure to act could not constitute first-degree child abuse. The circuit court denied the motion, and the Court of Appeals affirmed.

## STANDARD OF REVIEW

Issues of statutory interpretation are reviewed de novo. *People v Tennyson*, 487 Mich 730, 735 (2010). A district court's decision whether to bind over a defendant is reviewed for an abuse of discretion. *People v Perkins*, 468 Mich 448, 452 (2003). A bindover is sufficient if the offense charged has been committed and there is probable cause to believe that the defendant committed it. See *People v Stafford*, 434 Mich 125, 133 (1990).

## ANALYSIS

As stated, under the prosecution's theory of the case, first-degree child abuse serves as the predicate felony for the charge of felony murder. The prosecution attempts to establish first-degree child abuse in two alternative ways. First, the prosecution contends that defendant committed first-degree child abuse as a principal by leaving the child in her boyfriend's care with knowledge that serious injury would likely result. Second, the prosecution attempts to establish first-degree child abuse under an aiding-and-abetting theory. For the reasons stated below, I do not think that the prosecution can establish first-degree child abuse by defendant and, therefore, defendant cannot be bound over for first-degree child abuse or felony murder. I will address both of these theories in turn.

## FIRST-DEGREE CHILD ABUSE AS A PRINCIPAL

First-degree child abuse, MCL 750.136b(2), requires that a person "knowingly or intentionally cause serious physical or serious mental harm to a child." In my view, it is helpful in resolving this case to compare the first- and second-degree child abuse provisions. See *G C Timmis & Co v Guardian Alarm Co,* 468 Mich 416, 421 (2003) (explaining that individual statutory provisions "must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute") (quotation marks and citation omitted). *People v Maynor*, 470 Mich 289, 291 (2004), examined MCL 750.136b(2), and a majority held that first-degree child abuse "requires the prosecution to establish . . . not only that defendant intended to commit the act, but also that defendant intended to cause serious physical harm or knew that serious physical harm would be caused by her act." Although the *Maynor* majority did not expressly compare first-degree child abuse to second-degree child abuse, I believe that such an approach supports the *Maynor* majority's holding.

Specifically, the second-degree child abuse statute, MCL 750.136b(3), states:

A person is guilty of child abuse in the second degree if any of the following apply:

(a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

The *Maynor* concurrence analyzed the second-degree child abuse statute and noted that "the words 'knowingly' and 'intentionally' modify the phrase commits an act.' " *Maynor*, 470 Mich at 300 (WEAVER, J., concurring). Accordingly, the concurrence explained that in order to establish second-degree child abuse, the prosecution must prove only that a defendant intended to commit an act likely to cause harm, not that a defendant actually intended serious physical or mental harm. *Id*. at 300-301. The concurrence concluded that the Legislature could have included within the first-degree child abuse provision language similar to that within the second-degree child abuse provision if first-degree child abuse, like second-degree child abuse, *only* required proof that a defendant intended to *commit the act* that caused harm. *Id*. at 301.

As the *Maynor* concurrence demonstrates, when the first- and second-degree provisions of the child abuse statute are read together, it is clear that the first-degree provision is intended to punish conduct by which a defendant actually intended to cause harm, whereas the second-degree provision specifically criminalizes both omissions and reckless acts. Thus, when viewing the first- and second-degree child abuse provisions together, it defies logic to conclude that the Legislature would intend to punish as first-degree child abuse acts of recklessness or omission when the defendant lacks the specific intent that the harm would result as required under the first-degree child abuse provision. Because the Legislature decided to place acts of omission and recklessness in the second-degree provision, and not the first-degree provision, that conduct is only punishable as second-degree child abuse. See *Robinson v City of Lansing*, 486 Mich 1, 15 (2010) (stating that the Court "may not read into the statute what is not within the Legislature's intent as derived from the language of the statute") (quotation marks and citation omitted); see, also, *Jennings v Southwood*, 446 Mich 125, 142 (1994) ("[E]xpress mention in a statute of one thing implies the exclusion of other similar things.") (quotation marks and citation omitted). Accordingly, only acts by which a defendant

specifically intended to harm the child are punishable under the first-degree child abuse statute.

In my view, defendant's alleged conduct may be, at most, characterized as reckless. See *Black's Law Dictionary* (8th ed) (defining "reckless" as "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk"). While there *may* be sufficient evidence to establish probable cause for a charge of second-degree child abuse based on defendant's decision to leave the child with her boyfriend, in my opinion defendant's potentially reckless conduct does not give rise to the level of intent necessary to bind her over as a principal under the first-degree child abuse statute. Therefore, because I believe defendant's alleged conduct is, at most, reckless, which does not rise to the level of first-degree child abuse, there is not, as a matter of law, probable cause to bind defendant over on a charge of first-degree child abuse as a principal.[4]

## FIRST-DEGREE CHILD ABUSE AS AN AIDER AND ABETTOR

*People v Kelly*, 423 Mich 261, 278 (1985), generally explains that there are two forms of requisite intent under an aiding-and-abetting theory. First, a defendant may have the criminal intent necessary to be convicted of the crime as the principal. *Id*. Second, a defendant may also be convicted of a crime under an aiding-and-abetting theory if he or she has knowledge of a principal's intent to commit a crime when performing acts or giving encouragement that assisted the commission of that crime. *Id*. at 278-279. See, also, *People v Burrel*, 253 Mich 321, 322-323 (1931) (explaining that, had the defendant known of the principal's intentions when providing his aid, he could have been charged under an aiding-and-abetting theory); Perkins & Boyce, Criminal Law (3d ed), p 743. However, even if a defendant aids in the principal's resulting crime, the

---

[4] The prosecution also argues that defendant's actions constituted an omission punishable by the child abuse statute. MCL 750.136b(1)(c) defines "omission" for purposes of the child abuse statute as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." The prosecution argues that any omission by a defendant that falls outside the definition of "omission" in MCL 750.136b(1)(c) can constitute first-degree child abuse. However, the inclusion of acts of omission within the second-degree child abuse provision implies the exclusion of those acts from the first-degree child abuse provision because the express mention in a statute of one thing implies the exclusion of other similar things. *Jennings*, 446 at 142. And the prosecution's argument also ignores the rule that when a statute specifically defines a given term, that definition alone controls. *Addison Twp v Barnhart*, 495 Mich 90, 98 (2014), quoting *Tryc v Mich Veterans' Facility,* 451 Mich 129, 136 (1996). Thus, reading the word "omission" into the first-degree child abuse statute and giving it a different meaning than the statutory definition violates the rules of statutory interpretation.

defendant cannot be guilty as an aider and abettor if the defendant provided an "unwitting contribution." Perkins & Boyce, p 740. Thus, in order to bind a defendant over under an aiding-and-abetting theory when the defendant only had *knowledge* of the principal's intent, there must be probable cause that at the time of aiding and abetting the crime, the defendant not only knew or had reason to know of the *principal's intentions* but also shared the principal's purpose. See *id.*

Applying these basic elements, in my view the prosecution has not established probable cause to show that defendant's actions constitute aiding and abetting first-degree child abuse because the prosecution has not shown probable cause that defendant either (1) had the requisite intent to commit first-degree child abuse at the time that she left the child in her boyfriend's care or (2) knew that her boyfriend had the intent to commit first-degree child abuse at the time that defendant left the child in his care. As to the first form of intent, the prosecution does not argue that defendant specifically intended to cause serious physical or mental harm to the child by leaving the child with her boyfriend, and, as explained, defendant's actions do not support the argument that she had the intent required to bind her over under the first-degree child abuse statute as a principal. As to the second form of intent, the prosecution has offered no evidence to show that when defendant left the child with her boyfriend on the day in question, she knew of her boyfriend's intent to commit first-degree child abuse. In fact, there is no evidence that defendant's boyfriend *himself* had the requisite intent to commit first-degree child abuse at that time.[5] Although defendant perhaps should have known that her boyfriend posed a potential danger to the child, the knowledge of mere potential danger does not sufficiently inform defendant of her boyfriend's later-to-be-formed specific intent, nor does knowledge of potential danger bring defendant's purpose in line with her boyfriend's alleged purpose to harm the child as required by our aiding-and-abetting jurisprudence. Therefore, the prosecution has not established probable cause to show that defendant committed first-degree child abuse under an aiding-and-abetting theory.

The prosecution, however, cites *People v Robinson*, 475 Mich 1, 6 (2006), to argue that to bind a defendant over on felony murder under an aiding-and-abetting theory, the prosecution only needs to show probable cause of malice. However, that argument is contrary to our caselaw. In *People v Riley (After Remand)*, 468 Mich 135, 140 (2003), we explained that in order to convict a defendant of felony murder under an aiding-and-abetting theory, the prosecution must prove that the defendant

---

[5] Indeed, there is no evidence of defendant's boyfriend's intent and defendant's knowledge of that intent beyond the prosecution's argument that defendant *should have known* that her boyfriend *might* pose a danger to the child, which is not the standard under the aiding-and-abetting theory.

> (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) *while committing, attempting to commit, or assisting in the commission of the predicate felony*. [Emphasis added.]

Thus, to convict defendant under an aiding-and-abetting theory of felony murder, the prosecution must still show that defendant committed, attempted to commit, or assisted in committing the predicate felony: first-degree child abuse. Therefore, while it is true that the prosecution in this case must establish probable cause of at least malice to fulfill the second element under the *Riley* test,[6] this does not relieve the prosecution of the duty to nonetheless establish probable cause of commission of the predicate felony (first-degree child abuse) and its requisite intent in order to fulfill the third *Riley* requirement.[7] Because the prosecution is unable to establish probable cause regarding defendant's specific intent or knowledge of her boyfriend's specific intent to commit first-degree child abuse, it is my view that the trial court erred by binding defendant over on charges of first-degree child abuse and felony murder.

---

[6] I note that it is questionable whether the prosecution can establish the second element of the *Riley* test. It appears that defendant did not actually intend to kill or do great bodily harm to the child in the instance underlying the charge at issue. Further, I question whether defendant's omission of leaving the child in the care of her boyfriend created a *high risk* of death or great bodily harm with the *knowledge* that death or great bodily harm was the *probable* result. However, because the parties were not directed to, and did not, address this point, I will not address it at this time.

[7] Further, the prosecution misreads the *Robinson* majority's opinion. While I continue to stand by my *Robinson* dissent, the reason that the prosecution in *Robinson* had to prove only malice is because felony murder and the underlying felony, assault with intent to do great bodily harm less than murder, shared the same intent—i.e., malice. Thus, when the prosecution established malice for one crime in *Robinson*, it also necessarily established the intent for the other. However, in this case, the specific intent of first-degree child abuse is a higher standard than the malice required for felony murder, see *Robinson*, 475 Mich at 14, and, as noted within, the prosecution must establish both: the malice related to felony murder and the intent required by the predicate felony.

## CONCLUSION

For these reasons, I do not believe that there is sufficient evidence to show probable cause that defendant possessed the necessary intent to be bound over as a principle of first-degree child abuse or under an aiding-and-abetting theory. As a result, there is also insufficient evidence to establish probable cause that defendant committed first-degree child abuse as the predicate felony to felony murder. Therefore, I would reverse the judgment of the Court of Appeals and remand to the trial court with the instruction to dismiss the first-degree child abuse and felony-murder charges stemming from the child's death.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 29, 2014



Clerk

p1226